IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBIN ZAHRAN and KAREN ZAHRAN, ABBAS ZAHRAN, as Trustee, 5457 Bay Shore Drive Trust,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, MBNA, LASALLE BANK, and CORELOGIC TAX SERVICES LLC,<br><br>Defendants. | No. 15 C 1968<br><br>Judge Jorge Alonso |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Robin Zahran, Karen Zahran and Abbas Zahran sue defendants Bank of America, N.A. (as successor in interest to MBNA America, N.A., ("MBNA") and LaSalle Bank, N.A. ("LaSalle")) ("BANA"), and Corelogic Tax Services LLC ("Corelogic") asserting various claims of fraud, breach of contract and defamation as well as violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. Defendant BANA moves to dismiss all counts. This Court grants the motion in part and denies it in part.

I.      BACKGROUND

Although the issues in the Zahrans' sprawling, prolix complaint are difficult to define, it appears that this case stems from a number of transactions involving the Zahrans and BANA or its predecessors-in-interest and how these transactions were reported to credit reporting agencies.

### A. Mortgage on Wisconsin Property

In February 2003, plaintiffs sought to purchase property in Door County, Wisconsin, located at 5457 Bay Shore Drive, Sturgeon Bay.[1] In connection with the purchase, they borrowed $506,000 from ABN/AMRO Mortgage Group., Inc., as evidenced by a promissory note secured by a mortgage on the property. The note changed hands in a number of transactions, and BANA has held it since 2008.

#### 1. Credit reporting of note and mortgage on Wisconsin property

Robin Zahran ("Robin"), individually, and Abbas Zahran as trustee of the 5457 Bay Shore Drive Trust, signed the note as borrowers. Karen Zahran did not sign the note, but she initialed each page, as did Robin. Only Abbas Zahran signed the mortgage. (Compl. Ex. 1.)

Plaintiffs allege that, a few months after the transaction took place, Robin Zahran noticed that the lender had erroneously reported the debt as Robin and Karen Zahrans' personally, not the Trust's. The Zahrans complained to the lender, and the lender corrected the reporting accordingly. (*Id*. ¶ 12.) Sometime in or before 2011, after BANA had obtained the note, BANA began to report the debt as a personal obligation of Robin Zahran's again. (*Id*. ¶ 20.)

#### 2. Escrow Dispute

After a dispute arose between Robin Zahran and BANA concerning the monthly mortgage payments, a lawyer for BANA wrote the following in a December 5, 2012 letter to Robin:

> The Bank agrees to allow the Borrower to pay the real estate taxes directly to the appropriate governmental agency, provided that (1) the Borrower timely pays the required amounts in full, (2) the Borrower promptly provides to me or the Bank evidence of such payment, (3) if Borrower fails to timely pay the full amounts when due, the Bank may pay such amounts and the Borrower shall be obligated to repay the same in accordance with Section 9 of the Mortgage or other applicable

---

[1] The property actually appears to be located in the town of Sevastopol, although it has a Sturgeon Bay mailing address.

provisions of the Note or the Mortgage, and (4) the Bank may revoke such consent or waiver at any time by notice given in accordance with the Mortgage.

(Compl., Ex. 19, December 5, 2012 Letter from Lawrence M. Benjamin to Robin Zahran.) This agreement is consistent with the terms of the mortgage, which require the borrower to pay to the lender all amounts due for certain "escrow items" such as taxes and insurance, unless the lender waives the escrow obligation. (*Id*., Ex. 1 at Section 3, pp. 912-13.) However, the lender may revoke waiver of escrow "at any time" by giving notice in accordance with the terms of the mortgage. (*Id.*)

Robin paid for escrow items directly for a time, but he received a notice from BANA, dated September 24, 2014, notifying him that it had learned that the real estate taxes on the 5457 Bay Shore Drive property were in arrears and it was revoking its waiver of escrow. (Compl. ¶ 44.) Robin attempted to continue paying taxes directly, but he learned that defendant Corelogic had paid the taxes at BANA's direction. (*Id.* ¶ 47.) The Zahrans claim that they were timely paying the taxes on this property and they object to the revocation of waiver as tortious and a breach of contract.

### B. HELOC and Mortgage on Illinois Property

In 2002, plaintiffs obtained from LaSalle[2] a home equity line of credit ("HELOC") secured by a mortgage on their home at 718 Acorn Hill Lane, Oak Brook, Illinois. (*Id*. ¶ 32.) Plaintiffs allege that they sold their home in 2008 and used the proceeds to pay off the HELOC loan in full. (*Id.* ¶ 33.) However, according to plaintiffs, the lender reported to credit reporting agencies that it had written off this loan as a loss, and LaSalle and BANA have refused to fully correct the erroneous reporting. (*Id.* ¶¶ 34-36.)

---

[2] LaSalle was subsequently purchased by BANA. (Compl. ¶¶ 4,7.)

3

### C. Credit Card Settlement

In 2007, Robin had run up more than $60,000 in credit card debt. After negotiating with his creditor (FIA Card Services, Inc., an entity that was formerly known as MBNA and has since merged into BANA) and its debt collector, he settled the debt for $21,804, about 35% of the balance. (*Id.*, Ex. 6.) The debt appeared on Robin's credit report as settled for less than the amount owed or written off, but plaintiffs claim that the lender had promised to report the debt as paid in full. (*Id.* ¶¶ 25-26.) By breaking its promises in that regard, and by reporting some of the debt as Robin's personally instead of that of his business entity, Oak Brook Associates Financial Services (*Id.* ¶ 28), BANA and/or its predecessors-in-interest are alleged to have defrauded and defamed plaintiffs, breached the settlement agreement, and violated the Fair Credit Reporting Act.

## II. LEGAL STANDARDS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing

*Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

### III.  ANALYSIS

Plaintiffs' complaint consists of fourteen counts. In Counts I-V, plaintiffs assert claims of fraud in the inducement (Count I), breach of contract (Count II), violation of the Illinois Consumer Protection and Deceptive Practices Act (Count III), fraud (Count IV), and estoppel (Count V), all of which relate to the 2007 credit card debt settlement and relevant credit reporting. In Counts VI-VIII, plaintiffs assert claims of estoppel (Count VI), violations of the Fair Credit Reporting Act ("FCRA") (Count VII), and defamation *per se*/libel/slander (Count VIII[3]); these claims may be read to refer to the banks' credit reporting related to the credit card debt involved in the 2007 settlement as well as other debts. In the remaining counts, plaintiffs assert claims of breach of covenant implied in note or mortgage (Count IX), breach of contract (Count X), slander on title (Count XI), violation of the Wisconsin Consumer Protection Act and the Illinois Consumer Protection and Deceptive Practices Act (Count XII), specific performance (Count XIII), and estoppel (Count XIV), all of which relate to the 5457 Bay Shore Drive mortgage and the dispute over the escrow account.

### A.  Paid In Full Versus "Settled In Full" (Counts I-V)

In support of their allegations concerning the 2007 credit card debt settlement, plaintiffs submit as Exhibit 6 a December 29, 2007 letter from Creditors Interchange, a debt collector

---

[3] This count is mistakenly labeled "Count XIII," although it appears between Counts VII and Count IX.

5

working on behalf of FIA Card Services. In the letter, Creditors Interchange agrees to accept $21,804 in settlement of Robin Zahran's $62,279.45 of credit card debt.

Quite contrary to plaintiffs' allegations, however, the letter states that "[t]he credit bureaus will be notified . . . that [this] account is in a ***settled in full*** status" (emphasis added). The letter explicitly does ***not*** state that the debt will be reported as "paid in full," as plaintiffs allege in their complaint. Counts I-V all fail because plaintiffs' allegations are directly contradicted by the evidence they have submitted in support of their complaint. To the extent these counts are based on any other alleged promises made by defendant or its predecessors, plaintiffs do not describe these promises in sufficient detail or provide other facts that might raise their claims above the speculative level. Counts I-V are dismissed.

B. **Credit Reporting (Counts VI-III)**

Counts VI and VIII also relate to credit reporting, but these counts do not rest solely on the 2007 credit card debt settlement.

1. **Estoppel (Count VI)**

In Count VI, labeled "estoppel," plaintiffs appear to allege that LaSalle erroneously reported the home equity line of credit secured by a mortgage on Robin and Karen Zahrans' home address in Oak Brook, Illinois, as settled for less than the full amount owed, when in fact the Zahrans paid all amounts owed in 2008. As BANA argues, plaintiffs do not allege that BANA misrepresented or concealed any fact on which plaintiffs relied to their detriment. *See Cent. Contracting, Inc. v. Kenny Constr. Co.*, No. 11 C 9175, 2015 WL 832267, at *9 (N.D. Ill. Feb. 25, 2015); *Steinmetz v. Wolgamot*, 995 N.E.2d 338, 349 (Ill. App. Ct. 2013). Plaintiffs merely allege that they paid a debt that BANA reported as unpaid. They fail to state a claim for estoppel.

### 2. FCRA (Count VII)

In Count VII, plaintiffs claim that defendants violated the Fair Credit Reporting Act by furnishing erroneous information to credit reporting agencies and failing to correct the errors and inaccuracies upon being made aware of them.

In response, BANA contends that (a) there is no private right of action under the relevant section of the FCRA, and (b) plaintiffs' claims are barred by the statute of limitations, 15 U.S.C. § 1681p.

#### a. Private right of action

BANA is correct that there is no private right of action under 15 U.S.C. § 1681s-2(a), which prohibits furnishing inaccurate information to credit reporting agencies. *Todd v. Chase Bank USA, N.A.*, No. 11 C 6258, 2012 WL 470099, at *1-2 (N.D. Ill. Feb. 13, 2012); *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 966-67 (N.D. Ill. 2005). However, BANA does not address § 1681s-2(b), which plaintiffs also cite in their complaint, and which does provide a private right of action against entities that, upon learning that they may have furnished erroneous or inaccurate information to a credit reporting agency, fail to undertake a proper investigation and remedy any erroneous reporting they may have committed by alerting the credit reporting agencies of the errors. *Typpi v. PNC Bank, Nat'l Ass'n*, No. 13 CV 3930, 2014 WL 296035, at *9 (N.D. Ill. Jan. 27, 2014). Plaintiffs make sufficient allegations to state a claim under § 1681s-2(b), at least with regard to the mortgages.

#### b. Statute of limitations

BANA also contends that plaintiffs' FCRA claim is barred by the statute of limitations. An action under the FCRA must be brought within "2 years after the date of discovery by the

plaintiff of the violation that is the basis for such liability; or . . . 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

Plaintiffs contend that, although they had previously disputed the reporting of some of the debts involved in this case in the past, they noticed BANA's errors in 2011, after BANA "took over the servicing of the loan" secured by the 5457 Bay Shore Drive mortgage. (Resp. at 13.) In support of their claim, plaintiffs attach as Exhibit 4 numerous documents from credit reporting bureaus. The first of these is dated October 13, 2011, and the last of them is dated January 8, 2013.

Plaintiffs filed this lawsuit in the Circuit Court of Cook County on February 4, 2015. Although they filed the complaint more than two years after the most recent of the documents on which plaintiffs' credit-reporting claim is based, the statute of limitations begins to run on a § 1681s-2(b) claim not when the plaintiff discovers the erroneous reporting but when it becomes clear that the furnishing entity or entities "failed to comply with their FCRA duties" to investigate and correct any erroneous reports. *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 290 (S.D.N.Y. 2014). Plaintiffs' complaint may be read to allege that plaintiffs objected to the reporting of the information BANA had furnished to the credit reporting agencies, the credit reporting agencies made BANA aware of plaintiffs' objections, and BANA failed to correct its errors (Compl. ¶¶ 104-06), but it does not state when any of these events happened. It is therefore unclear when the statute of limitations began to run.

BANA may well have a valid statute of limitations defense, but the Court cannot conclude, solely on the basis of the complaint and its exhibits, that plaintiff has "admit[ted] all the ingredients of an impenetrable defense" under the statute of limitations in 15 U.S.C. § 1681p.

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Count VII survives.

### 3. Defamation (Count VIII)

In Count VIII, plaintiffs allege that BANA defamed them by publishing false information to credit-reporting agencies "with malice and total disregard to Zahrans' interests." (Compl. ¶ 119.) BANA contends that the FCRA provides immunity to entities furnishing information to credit reporting agencies from common-law defamation claims of the sort plaintiffs bring in this action. *Brawley v. U.S. Bank, N.A.*, No. 05-911-JPG, 2007 WL 315012, at *3 (S.D. Ill. Jan. 31, 2007) (citing 15 U.S.C. § 1681h).

BANA is correct as a general matter, but it fails to observe that furnishing entities are not immune from liability for common-law defamation if they are alleged to have furnished false information "with malice or willful intent to injure." 15 U.S.C. § 1681h(e). Plaintiffs specifically allege that BANA acted "with malice," so the immunity provision does not apply. Count VIII survives.

### C. Escrow Account

Counts IX-XIV all relate to the 5457 Bay Shore Drive mortgage and the dispute over the escrow account. In asserting each of these claims, plaintiffs fail to account for the fact that, under the express terms of both Section 3 of the mortgage and the 2012 agreement memorialized in the letter from BANA's attorney Lawrence Benjamin, the lender may revoke the waiver of escrow "at any time" by giving appropriate notice. (Compl., Ex. 1, Ex. 19.) Even if, as plaintiffs contend, it was actually incorrect that the 5457 Bay Shore Drive property was behind on its taxes in September 2014 when BANA revoked the waiver of escrow, BANA was nevertheless within its rights in opting to revoke waiver. It had the right to revoke waiver of escrow "at any time."

The Court cannot conclude that BANA breached any contract or somehow defrauded or deceived plaintiffs merely by exercising its right to revoke waiver of escrow, and plaintiffs do not provide other facts sufficient to state a plausible claim against BANA under any of the causes of action described in Counts IX-XIV. These counts are dismissed.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part BANA's motion to dismiss [8]. The motion is denied as to Counts VII and VIII. The motion is granted without prejudice as to the remaining counts. Plaintiffs have 21 days from the date of this order to amend their complaint if they wish to do so.

**SO ORDERED.**

        **ENTERED: July 17, 2015**

        _____
        **HON. JORGE L. ALONSO**
        **United States District Judge**