# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN ZAHRAN and | ) | |
| KAREN ZAHRAN, | ) | |
| ABBAS ZAHRAN as TRUSTEE | ) | |
| of the 5457 BAY SHORE DRIVE TRUST | ) | **Case No. 15 C 1968** |
| | ) | **Judge Jorge Alonso** |
| Plaintiffs, | ) | |
| V. | ) | |
| | ) | **F I L E D** |
| BANK OF AMERICA (as the Successor | ) | AUG 1 4 2015 |
| in Interest to MBNA and LASALLE BANK), | ) | **THOMAS G. BRUTON**<br>**CLERK, U.S. DISTRICT COURT** |
| Defendants. | | |

## PLAINTIFFS' AMENDED COMPLAINT

NOW COMES the Plaintiffs, Robin Zahran, Karen Zahran and Abbas Zahran as Trustee of the

Bay Shore Drive Trust representing the Trust appearing pro-se and in their own behalf and

complain of the above named Defendants, Bank of America referred to herein and throughout as

"BANA," for its own acts and as the successor in interest to MBNA and LaSalle Bank and for

the acts of its agent, Core Logic Corporation and allege as follows:

## THE PARTIES

1. Robin and Karen were residents of the State of Illinois, residing at 721 Acorn Hill Lane, Oakbrook, IL, and are currently residing at 5457 Bay Shore Drive, Sturgeon Bay, Wisconsin.

2. Bank of America, referred to herein and throughout as "BANA", is a national banking Corporation operating out of the State of North Carolina and transect acts business in Illinois. BANA purchased LaSalle Bank's assets on or about 2008 and became its sole successor in interest, and also purchased MBNA credit card services on or about the year of 2007 and became its sole successor in interest and retained Creditor Interchange as their agents in dealing with the Plaintiffs and for collection. Creditor Interchange will be referred to herein and throughout this complaint as, "CI".

3. Abbas Zahran is the named Trustee of the 5457 Bay Shore Drive Trust and is a resident of Liverpool, New York.

4. BANA also retained Core Logic as its agent, Core Logic LLC is a corporation specialized in providing mortgage information, consumer financial analysis, real estate tax collection and payments, tax escrow investigation, assessments and other services, located at 40 Pacifica, Suite 900 Irvine, CA, 92618. Under information and belief, Core Logic is not licensed to do business in the State of Wisconsin but was retained by BANA as its agent on matters relating to the real estate taxes of the Trust property mortgaged by BANA.

## GENERAL ALLEGATIONS

5. On or about January of 2003, Zahrans created a Trust commonly known as the 5457 Bay Shore Drive Trust. The Trust borrowed the amount of approximately $504,000 from ABN/AMRO Mortgage (who will be referred to herein and throughout as "ABN") for the purpose of purchasing the property located at 5457 Bay Shore Drive, Sturgeon Bay, WI. The

Trust signed a note evidencing the debt created by the purchase to ABN, who was located in Chicago, IL, Abbas Zahran was named as the Trustee. ABN at a later date sold or assigned the said note and its mortgage security interest to LaSalle Bank. See copy of note and first page of the Trust's Mortgage attached and marked as **Exhibit 1.**

6. LaSalle was ultimately purchased by BANA, along with its assets including the Note secured by the mortgage on 5457 Bay Shore Drive Trust, signed by the Trustee for the benefit of ABN which in turn assigned it to LaSalle Bank in July of 2008. LaSalle furthermore loaned Robin and Karen Zahran the amount of $500,000 as a line of credit secured by a mortgage on Plaintiff's personal residence at the time located at 718 Acorn Hill Lane, Oak Brook IL in the year of 2002.

7. On or about October of 2003, ABN reported the Trust loan to the various Credit Reporting Agencies, (referred to herein and throughout as "CRAs,") as Robin and Karen Zahrans' personal loan.

8. Zahrans protested the erroneous reporting to ABN and the CRAs and after discussions, all parties entered into an agreement, agreeing that the debt along with any credit reporting information related to it belongs to the 5457 Bay Shore Drive Trust and not Zahrans. ABN, thereafter corrected the reporting to the CRAs accordingly as agreed.

9. ABN as a result of the parties' agreement issued a letter confirming the parties' agreement and removed the loan reporting to the CRAs as Robin and Karen Zahran's personal loan as agreed with the CRAs and in compliance with FCRA. See ABN correspondence evidencing the agreements with Zahran along with TransUnion's letter to the information providers including LaSalle and ABN/AMRO attached and marked as **Exhibit 2.**

10. Robin Zahran, on another issue in the early years of 2000, was extended credit by MBNA through two credit cards, each of which had a separate line of credit. These credit cards numbers are as follows:

      a. Master card no. 5490 9936 7207 8062 with a line of credit of $25,000,

      b. Visa no. 4264 2963 0110 4292 with a line of credit in the amount of $62,100.

11. MBNA also issued a Platinum Plus for a business credit card to Oak Brook Associates Financial Services located at 1301 West 22nd Street, Oak Brook IL, (Card no. 4036475000884498) with a line of credit in the amount of $50,000. Zahran was the president of Oak Brook Associates Financial Services at the time. **Exhibit 3.**

12. After BANA purchased LaSalle along with the note and mortgage relating to the 5457 Bay Shore Drive Trust, BANA and its subsidiary, BAC Home Loans, resumed reporting to the various CRAs the Trust debt as Robin and Karen Zahran's debt personally, in contradiction and in breach of the prior contractual agreements between the parties and in breach of the prior understandings between all the parties relating to FCRA as they were notified by Transunion, ("TU")

13. BANA and BAC (a wholly owned subsidiary of BOA) furthermore reported to the various credit reporting agencies that Robin and Karen Zahran owed BANA on two different loan mortgages with the same amounts of debts; the first Account no, 87341xxxx and the second account no, 13330000005xxx for the amount of $506.000 in violation of the FCRA and in breach of the parties agreement Since BANA knew there was only one loan relating to the Wi property. See Equifax credit report relating to BANA and BAC Home Loans reporting attached and marked as **Exhibit 4.**

14. BANA, after protests by both of Zahrans to the CRAs, omitted Karen Zahran as a debtor, naming only Robin Zahran personally as a debtor on both loans- in breach of the prior agreements with ABN and the CRAs, and in violation of FCRA of the requirement of accurate reporting. BANA knew clearly and without doubt of its erroneous and false reporting of two loans at the time BANA knew only one loan exists.

15. Despite Zahrans' protests and demands for deleting the improper erroneous reporting's by BANA and BAC of the erroneous information provided to the CRAs relating to the existence of two loans and the erroneous outstanding balance on the credit card debt which was settled and no balance was owed by agreement, BANA refused to delete the improper reporting- in breach of the prior loan documentations and agreements entered into between Zahrans and ABN and in breach of the settlement agreement relating to the credit card outstanding balance reported to the CRA's but BANA insisted and continued its reporting despite all prior agreements.

16. BANA, on or about the year of 2011 without authorization, permission, knowledge or notice to Zahrans or the Trustee, changed the loan title and the note holder's name from the "5457 Bay Shore Drive Trust" to Robin Zahran personally and reported the loan obligation and history to the CRAs in the name of Robin Zahran in breach of the parties agreements.

17. Under information and belief, BANA, in reclassifying the loan to Robin Zahran personally and in removing the Trust from the record as the owner and responsible party, took this act willfully and wantonly motivated by malice to intentionally, maliciously to harm Robin Zahran's credit rating in retaliation against Zahrans for filing suit against BANA in the Circuit Court of Cook County for specific performance among other counts.

18. Zahrans, on various occasions and up to the time of filing this complaint, protested the erroneous reporting to the CRAs by demanding the deletion of the erroneous reporting's or to report them accurately based on the prior agreements with BANA. The CRAs refused, stating to Zahran they in fact investigated Zahrans' complaint thoroughly with BANA and BAC home loans, and that BANA confirmed to them the accuracy of the reporting and that BANA had in fact supplied them with verified documentations in support of the reporting.

19. On or about December of 2007, MBNA and BANA, through their collection agency or agent by the name of Creditor's Interchange ("CI"), offered Zahran to release him of any and all of his obligations, debts and liabilities owed or due MBNA /BANA on his credit card account balances in exchange for the payment of $21,804.00. Zahran accepted the offer and paid accordingly. See copy of the written offer in exchange for the specific promises by CI along with evidence of Zahran's payment attached and marked as **Exhibit 5.**

20. BANA, at a later tardy date pursuant to the agreement, issued an IRS 1098 income statement on or about the year of 2011 to Zahran, declaring the amounts of reduction/write-off of the balance previously owed to BANA or MBNA on the credit card debts per the settlement as income to Zahran personally. Zahran claimed the settled amounts as taxable income on his tax returns. See IRS1098 forms attached and marked as **Exhibit 6**

21. BANA /MBNA, despite agreeing to the settlement agreement and receiving the total amount agreed upon, continued to report that the settled credit card balances were still unpaid and forwarded Zahran alleged remaining balances which were settled for collection through various attorneys.

22. BANA / MBNA, contrary to their promises of reporting the credit cards status and balances to the CRAs as satisfied in full in exchange for the payment made, reported to the CRAs that

there are amounts still owed on the credit card accounts and forwarded the accounts to collection attorneys.

23. BANA /MBNA, after receiving the payment through CI and in breach of the parties agreement and settlement, reported that BANA's loan is still owed on account number 4264296301104292 in breach of BANA / MBNA representations and inducement to Zahran prior to Zahran's payment of the agreed upon amount.

24. BANA / MBNA furthermore reported Oak Brook Associates Financial Services credit card as the obligation of Robin Zahran personally to the CRAs at the time BANA/MBNA knew the obligation on that particular credit card was that of Oak Brook Financial alone which was utilized for the business purposes of Oak Brook Associates financial services and not Zahran personally.

25. BANA/ MBNA furthermore attempted to collect on the settled account and on the alleged debt of Oak Brook Financial from Robin Zahran personally through its various collection attorneys and/or agencies by the name of Mann Bracken and others, who harassed Zahran continuously for a period in excess of 2 years despite Zahran's demands for these harassments and phone calls to cease, but to no avail. See Mann & Bracken's correspondence and other attorneys representing BOA, marked as **Exhibit 7**

26. Zahran protested to BANA and Mann Bracken their fraudulent demands for payments of the settled account and the released debts not owed by Zahran, demanding from them to cease and desist their actions but to no avail.

27. On or about Jan. of 2008, Zahrans sold their residence located at 718 Acorn Hill Lane, Oak Brook, IL subject of LaSalle's loan for the amount of $1,350,000 and requested a payoff letter from LaSalle of the balance due on the loan prior to closing. Zahrans furthermore directed Chicago Title (as the closing escrow agent) to pay off the entire balance of the

amount calculated as owed by LaSalle and to forwarded it to LaSalle at closing in reliance on LaSalle's payoff letter. See LaSalle's letter for the payoff amount, along with the closing statements by Chicago Title evidencing payment of the amount requested by LaSalle attached herein and marked as **Exhibit 8**

28. Subsequent to Zahrans' pay off of the loan in reliance on LaSalle's payoff letter as calculated by LaSalle, LaSalle reported to the CRAs that it had written off the entire loan of Robin and Karen Zahran as a total loss despite receiving the entire amount of the pay-off in full as requested and as calculated and demanded by LaSalle as a condition for the release of its mortgage lien on the property to effectuate closing.

29. LaSalle, after protests by Zahrans, changed the credit reporting to the CRAs from a total amount of the mortgage loan was written off to the loan was paid but for an amount less than the amount owed.

30. BANA, despite Zahrans' protests and demands for corrections of the reporting made to the CRAs, refused to correct the erroneous reporting and insisted on keeping the erroneous reporting to the CRAs stand as erroneously reported.

31. BANA furthermore breached its duty expressed and implied under the note and mortgage provisions, requiring the safe keeping of accurate records of payments and loan record balances, as is required by state and federal laws governing mortgage disclosures and accurate mortgage loans accounting up to present day but refuses to provide proper accounting of the payments made by any of the Plaintiffs or provide any support for its calculations of the mortgages and note alleged balances despite Plaintiffs' constant demands.

32. On or about Jan. 2, 2015, BANA sent correspondence to Robin Zahran at the address of 5457 Bay Shore Drive, Sturgeon Bay, WI containing a backdated notice relating to insurance and real estate tax escrow account allegedly typed on Sept. 24, 2014, along with a notification from BANA placing

Robin Zahran on notice and demand for monthly payments for the escrow account in the amount of $1,782.29 beginning March 1, 2015.

33. BANA further represented that it will establish an escrow account for the payment of taxes and insurance for the amount of monthly payment of $1,782.29, equaling the amount of annual deposit of $21,387.48 in addition to the monthly payment due on the note of $2,205.29, for the total amount of monthly payments of $3,987.58.

34. BANA further demanded the immediate additional amount of an alleged Escrow account shortage amount due March 1, 2015 in the amount of $12,010.77, along with a coupon payment. In essence, the demanded amount for the Escrow in the first year will add up to $33,398.25- approximately four (4) times the amount of the real estate taxes and insurance premiums due for the entire year! See correspondence, notice and demands by the BANA attached and marked as **Exhibit 9**

35. Robin and Karen Zahran own additional properties and another parcels of land in the State of Wisconsin, one of which is located in Door County, WI and accordingly received a tax bill and paid it accordingly. See Exhibit 10.

36. On or about Jan. 10, 2015, Zahrans were surprised upon the return of their tax payment by the Door County treasurer, notifying them that the taxes have been paid by Core logic Tax Service LLC. See copy of notice and return of payment attached and marked as **Exhibit 10**

37. Zahrans promptly called the treasurer office, who notified them that all of Zahrans' property taxes in Door County were paid by Core logic for the entire 2014 tax year and prior to any deadline for the payment of taxes of the first installment due on Jan. 31, 2015 and the second installment due on July 31, 2015. See copy of payments made by Core logic, attached and marked as **Exhibit 11**

38. Door County's yearly payment of property taxes assessment under the Wisconsin code consists of two installments. The first half of the yearly tax due must be made by Jan. 31st of each year and the second installment must be made by July 31st of each year.

39. The tax due on Plaintiffs' two parcel property for the first half was for the amount of $2,691.59 and $1,329.00 for the total amount of $4,020.87, approximately the same amount prior to July 31 of same year.

40. On or about Jan. 12, 2015, the Door County Treasurer, upon investigation of Plaintiffs' complaint, discovered that Core logic paid the prior tax year taxes of which Zahran in behalf of the Trust had already paid prior to Core logic's payment. The treasurer further notified Robin Zahran that the office of the treasurer had already sent a refund to the Trust of over payment in the amount of $1,595.00. Also see the various statements relating to payments and issued by BANA and sent to Zahrans. See also return payment made to the trust attached and marked as **Exhibit 12**

41. Core Logic, acting in behalf of BANA paid amounts of taxes in behalf of the Trust for the first installment in the amount of $6,470.55, resulting in an alleged over payment of the amount of $1,595.00 for the net amount (per county treasurer of $4,875.55) for the first installment which is still over the amount due on the first installment due on Jan. 31, 2015 for the amounts of $4,020.87 by the - amount of $854.68. **See Exhibit 12**

42. The Plaintiffs returned the refunded payment to the Door County Treasurer, along with their payment of the first installment due prior to Jan. 31st, as is required for the accurate amount of $4,020.87. **See Exhibit 12**

43. BANA and Core Logic paid Zahrans' taxes on property of which BOA have no interest in whatsoever and caused The Door County treasurer to refund the taxes paid by Zahrans on that property of which BANA nor Core Logic have any right or interest to assert or establish a lien for the payment of taxes under any law.

44. On or about Jan. 8, 2015 after receiving BANA correspondence relating to the new payments, the establishment of the escrow account and the payment of taxes on property not related to BANA loan whatsoever, the Plaintiff, Robin Zahran, called BANA's customer service inquiring about Core logic and BANA's actions.

45. BANA in response informed the Plaintiffs that BANA's position is clear in their correspondence and will file a foreclosure action on the note and mortgage immediately if Zahran does not comply with BANA's reasoning and further that there are many problems and bad history of the loan- citing to the current litigation between the parties.

46. Zahran, in that conversation, demanded a detailed explanation from BANA and all of the details and circumstances surrounding their conduct and actions relating to the payments of taxes and the payment of taxes on property of which BANA did not mortgage nor have interest in whatsoever nor loaned funds nor have a lien or mortgage interests in.

47. BANA's customer service representative refused to respond to Zahran's inquiries with the exception of placing Zahran on notice that BANA is only exercising its right to assert liens on any and all property owned by the Plaintiffs in Door County to secure the payments of taxes regardless if BANA advanced or loaned funds to Zahran unrelated to its existing loan.

48. BANA's customer service representative promised to send details of what occurred on that day, but instead sent a form letter to Zahrans, asserting BANA's alleged rights for their actions and conduct.

## DAMAGES

49. Zahrans, as the direct and proximate result of these named Defendants' erroneous actions, breaches of contracts, fraud, negligence and the constant improper erroneous and negligent reporting relating to Plaintiffs' credit, sustained damages consisting of these Plaintiffs' inability to borrow funds to finance their manufacturing and farming businesses, and sustained damages and losses in excess of $1,000,000, in additional to consequential losses in excess of additional $3,000,000, along with severe emotional distress, constant strains on their financial conditions caused by BANA's conduct described above.

## COUNT I

### Fraud in the Inducement against BANA/ MBNA

50: The Plaintiff, Robin Zahran, re-allege the relative specific paragraphs plead in paragraph 1 through paragraph 48 relative to BANA/ MBNA's actions, along with the relative Exhibit 6 attached to this Complaint as paragraph 1 of this count for Fraud in the Inducement against BANA/ MBNA.

51. The Defendants utilized the false promises made as described in the above paragraphs and exhibits relating to the agreement of the payments owed to BANA/ MBNA to induce Zahran into entering into the account settlement agreement with BANA/MBNA for the purpose of abandoning Zahrans' claims against BANA/ MBNA and the payment of the amount $21,804.00 to the CI.

52. BANA/ MBNA, through their agent CI, furthermore promised Zahran that in exchange for the payment of the $21,804.00 that they would notify the credit reporting agencies and inform them that the amount of debt was satisfied in full.

53. BANA/ MBNA had no intension of fulfilling their promises and inducements made to Zahran as described and plead above but utilized and used and employed these false promises and representations to induce Zahran into paying the amount of $21,804.00 in reliance on these promises.

54. Zahran relied on Defendants' representations and promises described above to enter into the debt settlement agreement. Zahran accepted the offer as shown and paid the amount of

$21,804.00, and released his claims against BANA/ MBNA for the erroneous charges, improper accounting and improper interest charge as a result of this reliance on BOA/MBNA's specific representation as written in the agreement to settle the credit card debit.

55. BANA/MBNA, despite receiving the funds from Zahran as a settlement of the entire amount owed, continued to attempt to collect the settle amount of debt in breach of the contract/ for settlement agreed upon utilized as an inducement.

56. BANA additionally retained various attorneys to collect the amounts it agreed to settle in exchange for the payment made.

57. Zahran sustained damages as a result of Defendants' inducements, contributions and actions as alleged in this count in an amount in excess of $500,000 and in consequential damages in an amount in excess of $1,000,000.

   **WHEREFORE,** Robin Zahran prays for judgment against each BANA/ MBNA for all damages sustained in an amount in excess of $500,000, and for consequential damages in excess of $1,000,000, along with costs of suit, attorney fees and legal costs and for punitive damages in an amount in excess of $1,000,000, enough to deter BANA from similar conduct in the future against others.

## COUNT II

### Breach of Contract against BANA/ MBNA

58. The Plaintiff Robin Zahran re-allege the relative specific paragraphs plead in paragraph 1 through 48 relative to BANA/ MBNA and CI combined actions, along with the relative Exhibits

including Exhibit 6 attached to this Complaint as paragraph 1 of this count for breach of contract against BANA/MBNA.

59. BANA/ MBNA offered Zahran In exchange for the payment of $21,804, that BANA/MBNA will treat the credit card balances as fully settled with no further balances owed and as a full satisfaction of debt owed by Zahran to BANA/MBNA on the credit cards balances and to report and instruct all credit reporting agencies to consider the debt as settled in full.

60. Zahran performed all of what was required of him under the agreement shown in Exhibit No. 6 attached to this complaint.

61. BANA/ MBNA breached their duty of good faith and fair dealings implied in every contract under IL law, especially where the performance of the contract entered into between the parties places the duty of performance for the most part on one party based on the other party's lack of ability to engage in the execution of the provisions of the agreement stipulated for, other than the performance of the payment as called for in the agreement.

62. BANA/MBNA furthermore breached the contract with Zahran as outlined above and refused to honor their commitment to report to CRAs that Zahran's credit card account balance was settled in full as agreed. And continued to attempt to collect on the debt that was settled as a consideration for the payment made by Zahran.

63. BANA/MBNA despite their agreements, continued their erroneous reporting to the various credit reporting agencies in breach of their agreement with Zahran until the time this complaint was filed present.

14

64. BANA furthermore persisted on breaching the contract through the date of filing this complaint by falsely reporting to the various credit reporting agencies that the credit card balance is still owed for the amount reported to the CRAs.

65. Zahran as a direct and proximate result of BANA/MBNA actions and breaches sustained direct and approximate damages in excess of $500,000 and consequential damages in excess of $1,000,000, in addition to special damages, costs along with other consequential damages and legal fees.

WHEREFORE, the Plaintiff, Robin Zahran, pray that the Honorable Court grant him judgment against BANA for an amount in excess of $500,000 and for consequential damages in excess of $1,000,000 and for costs of suit.

## COUNT III

### Violation of the Illinois Consumer Protection and Deceptive Practices Act
### Against BANA/ MBNA

66. The Plaintiff, Robin Zahran, re-allege the relative specific paragraphs plead in paragraph 1 through 48 relative to BANA/ MBNA and CI combined actions, along with the relative Exhibits No.3 and 6 attached to this Count as paragraph 1 of this count against BANA/ MBNA for Violations of the IL Consumer and Deceptive Practices Act.

67. While Plaintiffs and Defendant were negotiating the settlement agreements, there existed in the State of Illinois a statue called the IL Deceptive and Consumer Fraud Act, 815 ILCS 5052 which provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" ,

15

approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

The Defendant violated the provision of the IL Deceptive Practices Act as specifically alleged above and utilized, employed and instituted deceptive practices as pled above.

68. These Defendants named in this count made representations to Zahran relating to the credit card balances and CRA's credit reporting knowing they had no intension of fulfilling their promises and representations as they represented.

69. BANA/ MBNA utilized these promises to induce Zahran to rely on them and perform accordingly.

70. Zahrans' relied on the Defendants' misrepresentations to his damage and detriment.

71. BANA utilized these promises and representations in carrying out its business and commerce in violation of the IL. Consumer Fraud and Protection Act

72. BANA/MBNA's conduct as described above was carried out in violation of the IL Statue cited herein for consumer fraud and was intentional.

73. Zahran sustained damages as the direct and proximate result of Defendants' actions and contributions in an amount in excess of $500,000 along ng with consequential damages in excess of $1,000,000 and other damages.

74. BANA/ MBNA conduct is in violation of the IL Consumer Fraud and Deceptive Practices Act cited above.

WHEREFORE, Zahran prays for judgment against the Defendants for all damages sustained, and for all penalties applicable under the statue cited herein for an amount in excess of $1,000,000 and for consequential damages and for all legal fees and costs of suit and for an

amount of punitive damages in excess of $500,000, to deter these Defendants from similar conduct in the future.

## COUNT IV

### **Fraud against BANA/ MBNA**

75. The Plaintiff Robin Zahran re-allege the relative specific paragraphs plead in paragraph 1 through 48 and par. 67, 68, 69,71,72, relative to BANA/ MBNA and CI combined actions, along with the relative Exhibits 3 and No. 6 attached to this Complaint as paragraph 1 of this count for Fraud by BANA/ MBNA.

76. The Defendants made the promises and representations intending Zahran to rely on them to his detriment.

77. Defendant knew or should have known that Zahrans' reliance on their representations was foreseeable and expected.

78. Zahran in fact relied on defendants' misrepresentations and promises to his damage and detriment on these representations made by BANA.

79. BANA moreover referred the balance of the amount settled by the Bank to Mann/Bracken law firm and at a later date to Attorney Zwicker Law Firm, Hanna and others to collect the amount that had been released through the settlement of debt agreement.

80. BANA /LaSalle entered into a specific agreement with Robin and Karen Zahran relating to the payment of the outstanding line of credit. Zahrans performed all of what was required of them and paid the amount requested by BANA/ LaSalle as a condition precedent prior to releasing BANA/ LaSalle's lien by paying the amount agreed upon as calculated at closing by LaSalle. See Exhibit 8

81. The Defendant, contrary to agreement and its own calculations to report BANA/LaSalle's debt as paid in full, refused to report it as paid in full after receiving Zahrans' payment in breach of the parties' agreement.

82. Defendant, contrary to agreement, promises and commitment made reported to the CRAs that Zahrans' failed to pay the debt and that as a result BANA/LaSalle had written the debt off as unpaid , contrary to and in contradiction to LaSalle's own calculations and representations of the accurate amount owed.

83. Based on the above, the Defendant herein was and is estopped from adopting a contrary position to that of what has been agreed upon and executed by the parties.

84. The Defendant's agreement and promises to Zahrans are enforceable and binding on the parties under IL law, including the refraining from reporting any adverse reporting contradicting the agreements and declarations represented by BANA/LaSalle relating to the reporting status.

85. LaSalle is therefore estopped under IL law from claiming any defense, position or contention- opposite that position of what was specifically agreed upon between the parties through certain agreements, contracts or settlements and should be held responsible for the damages caused by its breach.

86. BANA is therefore estopped from advancing any contention opposite or contradicting what has been agreed upon by the parties through their various agreements relating to the payoff of the amount of the outstanding loan, or credit card balances.

87. The Defendants, contrary to agreement, reported the balance as unpaid to the various credit reporting agencies and as an outstanding amount due on the account, contrary to,

agreements, promises, representations and commitment made in exchange for the payment made.

88. Zahran sustained damages as the direct and proximate result of Defendants' actions and fraud in an amount in excess of $500,000 along with consequential damages in excess of $1,000,000 and other special damages.

WHEREFORE, Zahran prays for judgment against the Defendants for the all of the damages sustained, in excess of $500,000, and for consequential damages in excess of 3,000,000 along with costs of suit, legal fees and for punitive damages in an amount in excess of $500,000, enough to deter these Defendants from similar conduct in the future.

## COUNT V

### Willful and Intentional, or the Alternate, Negligent Violations of Fair Credit Reporting Act 15 U.S.C 1681s-2(b) and 15 U.S.C.S. 1681s- (2) (b) against Bank of America and LaSalle

89. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 48 relative to the named Defendants in this count, along with the relative exhibits attached as paragraph 1 of this count for Intentional and Willful reporting of erroneous information referencing Zahrans to the CRAs or, in the alternate, for gross Negligence in reporting without caring if the information.

90. These Defendants willfully and knowingly knew the information they provided to the various credit agencies were wrong.

91. It was unreasonable for these Defendants not to know and realize that the information each of them provided to the CRAs were in fact erroneous and untrue in violation of the FCRA 15 USCA1681s-2(a) which prohibits giving (C.R.A.s) information if the creditor knows or consciously avoids knowing that the information is inaccurate.

92. The Defendants' acts were willful and wanton and in the alternate negligent in providing the erroneous and inaccurate information to CRAs relating to Zahrans' in violation of 15 USCS. 1681s-2(a), 1681s-2(a).

93. These Defendants failed to exercise reasonable care in providing information to the credit reporting agencies leading to statuary as well as common law liability for failure to report Zahrans' payment history and agreements with them accurately to the CRAs in violation of 15 USCS 1681s-2. 15 USCS 1681s- 2(a) (1) (A) which prohibits creditors from furnishing consumer information to a credit reporting agency if a creditor knows or consciously avoids knowing that the information is inaccurate.

94. USCS {1681s 2-(b) (1) imposes certain duties on a creditor who has been notified by a consumer reporting agency of a consumer's complaint under 1681s-2(a) (1) (A) and they were notified.

95. These Defendants failed to properly investigate Zahrans' consumer's complaint to the CRAs when requested to do so by the CRA's and wantonly and intentionally failed to provide accurate information to the CRAs relating to either of Zahrans' credit reports.

96. The named Defendants in this count knew their information provided to the various CRA's were in fact false, erroneous, purposely misleading and reported them with malice and or with sinister purpose to harm Zahrans.

97. The information provided to the CRA's were in fact false, misleading or obsolete and were furnished with malice and or willful intent to injure Plaintiffs and, in the alternate, were furnished negligently in noncompliance with FCRA 15 USC 1681h (e), therefore qualifying these Defendants for punitive damage for willful violation. 15 USCS {1681n (a) (2).

98. The Defendants' acts and reporting is a clear act of false invasion of privacy as shown.

99. FCRA authorizes the court to award costs of the action together with reasonable attorney fees under 15 USCS {{ 1681n (a)(3), 1681 o (a)(2) moreover 15 USCS {{ 1681 n(a) allows punitive damages and , attorney fees under 15 USCS 1681 n(a)(3) in addition to section 1681 o(a)(2).

100.   The Defendants persistently and willfully and with malice in violation of 1681 h (e) along with willful noncompliance of section 1681 n of the Act committed the act of negligent noncompliance of the fair credit reporting act sub –paragraphs 1681 a (f) and section (1681)n, and section 1681(o).

100. The Defendants defamed, slandered and libeled Zahrans to the general public and the business community through their false and erroneous reporting, in spite of their promises, commitments and agreement to refrain and abstain from such conduct. The Defendants' reporting are therefore considered defamation per–se under IL law.

101. Under FCRA, any person who willfully or negligently fails to comply with the Fair Credit Reporting Act is liable for damages. 15 USC {1681(n) (a), 1681 o (a).

102. The Plaintiffs sustained direct damages as a direct and proximate result of these Defendants' conduct in an amount in excess of $500,000 in direct losses and in an amount in excess of $1,000,000 in consequential damages in addition to costs and legal fees.

WHEREFORE, the Plaintiffs pray and request from the Honorable Court to enter judgment against each of the Defendants for the amounts of direct damages sustained by Plaintiffs in an amount in in excess of $500,000 and for an amount for consequential damages sustained in excess of $1,000,000 and for an amount in excess of $1,000,000 for punitive damages to deter these Defendants from committing similar conduct in the future along with costs of suit and legal fees.

## COUNT VI

### Defamation Per-Se, Slander and Libel against BANA and LaSalle,

**(This account is plead in the alternate to the count for causes of action plead for various violations of the Fair Credit Reporting Act)**

103. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 48 relative to BANA and LaSalle, along with the relative Exhibits attached to this complaint related to this count for Slander and Liable as paragraph 1 of this count for Defamation, Slander and Libel against the named Defendants in this count.

104. The Defendants persisted on keeping the false negative information provided and disseminated by them and displayed to the entities and persons who were interested in transacting business with Zahrans and to the various credit reporting agencies despite Zahrans' constant demands for the removal of these negative reports by the Defendants, showing the erroneous reports.

105. Defendants made and published and continue to publish up to present day the derogatory and slanderous statements motivated by malice against Zahrans up to present day.

106. Defendants, at all times throughout while providing the slanderous and defamatory statements, knew their actions would harm Zahrans and in their businesses but persisted into their actions and disparagements and continued to report false statements referencing Zahrans in order to harm them personally and in their business interests and reputation, knowing that their statements relating to Zahrans were in fact false and contrary to the promises and agreements made and contrary to agreement and settlement executed with Zahrans by BANA.

107. In the alternate, the Defendant negligently and recklessly continued to publish these false statements without caring if the statements were true or false, motivated by malice because of Zahrans' insistence on Defendant's performance of their obligations pursuant to their respective agreements with Zahrans and/or pursuant to the settlement agreements entered into that were applicable to governmental regulations.

108. Defendants' published statements were made with malice and with total disregard to Zahrans' interests and are therefore considered defamation (per-se), under Illinois Law.

109. The Plaintiffs suffered and continues to suffer as a result of Defendants' statements in their personal and business financial affairs causing Zahrans' damages in excess of $500,000, and consequential damages in excess of $1,000,000.

WHEREFORE, the Plaintiffs pray that the Honorable Court grant them judgment against the Defendants and each one of them for an amount in excess of $500,000 for direct damages and for consequential damages in excess of $1,000,000 in addition to costs of suit and legal and attorney fees and for punitive damages in an amount in excess of $1,000,000 against each of the Defendants named in this count to deter them from committing similar conduct in the future against others.

## COUNT VII

### Breach of the Covenants Implied in the Note and Mortgage for the Lender to Maintain Accurate Accounting of which BANA Breached in Violation of the Various State and Federal Laws for Improper Real Estate Tax Accounting

110. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 48 relative to the BANA duty to keep accurate books, records and balances of its mortgagee's balances.

111. BANA under Federal law, and regulation and the RRSBA and under Wisconsin law is required to maintain accurate books and records of the loan balances and provide same to borrower in the event of written or verbal request for the accounting.

112. BANA failed to keep accurate books and records and failed to maintain accurate books and records evidenced by its contradictory statements appearing on statements sent to plaintiff including but not limited to claims and demands for payments for alleged late real estate taxes,

23

insurance premiums, and payment of taxes on property not related to BANA's loan and the contradictory billing statements, attached and marked as **Exhibit 9**

113. BANA failed to provide accurate accounting to Zahran pursuant to his requests as calls for RESBA and other Wisconsin and Federal laws.

114. BANA's conduct and failure to keep accurate accounting of the balances of the loan and payments by the Plaintiffs is a violation of its duty for keeping accurate records.

115. BANA breached its Covenant Implied in the Note and Mortgage for proper accounting of the payments made and for the lender's obligations to keep accurate accounting and books of the loan balances as is required under the federal and state laws.

116. BANA breached its duty and is negligent of its duty in the performing proper accounting and in keeping accurate records as is required under the law.

117. The Plaintiffs sustained damages as a result of BANA and Core Logic improper accounting practices in an amount in excess of $100,000, and sustained further damages as the result of BANA's improper accounting evidenced by its demands for payments of erroneous amounts allegedly owed through forwarding erroneous billing statements along with carrying improper loan balances as shown in the attached exhibits to this complaint relating to BANA demands for payments due throughout.

118. BANA furthermore improperly demanded reimbursements from the Plaintiffs for claimed expenses, interest charges, and real estate tax payments that were improperly paid and or not owed, resulting in additional damages to the Plaintiffs in wasted time and resources to perform proper accounting and investigation as a result of BANA's and Core Logic improper accounting practices relating to Plaintiffs' real estate taxes.

24

WHEREFORE, the Plaintiffs pray that the Honorable Court grant judgment against BANA for an amount in excess of $1,000,000, plus attorney fees, and for an order directing BANA to provide a certified accounting records for this loan from inception to present day to Plaintiffs showing all amounts of the loan payments tendered by Plaintiffs towards the loan and all debts and credits and for costs and legal fees.

## COUNT VIII

## VIOLATION OF RESBA ON AMOUNTS BEING DEMANDED FOR ESCROW ACCOUNT

114. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 48 relative to BANA demand for creating an escrow account, along with the relative Exhibits attached to this complaint relative to this count and as paragraph 1 of this count relating to the demand for the establishment of an escrow account.

115. Section 3 of the mortgage attached to this complaint governs the conditions under which the lender is allowed to establish an escrow account. BANA breached the mortgage covenant relating to setting up an escrow account and violated RESBA regulation its attempts for establishing an escrow account as follows

(a) BANA demanded escrow payment for real estate taxes in excess of RESBA regulation of 116% of the prior year real estate taxes in violation of RESBA 2610, 2605, 2609 ( a) ( 1).

( b) paid real estate taxes on certain of Zahrans real estate property not mortgaged by BANA nor does BANA have any interest in whatsoever. See **exhibit 10**

116. The Plaintiffs will sustain further damages and have already sustained damages as a result of BANA and its agent/ Core Logic's conduct.

117. BANA'S conduct creates an illegal debt of which BANA have no right to exercise through creating a claim on Zahrans' property.

WHEREFORE, the Plaintiffs pray that the Honorable Court issue an order directing BANA to cease and desist the demand for the establishment of an escrow account in excess of the allowable amounts under RESBA and to assess all damages sustained by the Plaintiffs pursuant to Wisconsin Law governing Escrow accounts and for legal fees, costs of suit, and for all the penalties pursuant to RESBA regulations.

## COUNT IX

### Slander on Title against BANA and Core Logic

118. The Plaintiffs re-allege the relative paragraphs plead in paragraph 1 through 48 relative to BANA and its' agent Core Logic's conduct and actions, along with the relative Exhibits 10 attached to this complaint and specifically related to the payment of taxes on Zahran's properties not related to BANA's mortgage or any business relationship between Zahrans and BANA.

119. BANA's conduct in paying these taxes constitutes an act of Slander on Title in violation of common law and in violation of Wisconsin Statue 76 &13 . 1.

120. BANA have no interest in paying the real estate taxes on Plaintiffs' property of which neither of these Defendants have any security interest.

121. The Plaintiffs, Robin and Karen Zahran, purchased a vacant parcel of land located in Door County, Wisconsin without borrowing any funds from BANA relating to that purchase.

122. These Defendants' payment of taxes towards Plaintiffs' property constitutes the exercising of control and domain and establishing a lien over Plaintiffs' property without any justification

whatsoever except the satisfying BANA's malice and for the financial detriment t of both Plaintiffs' resulting in damages to both Plaintiffs.

123. The Plaintiffs sustained damages as a direct and approximate result of Defendant's actions in an amount in excess of $25,000, plus costs

WHEREFORE, the Plaintiffs pray that the Honorable Court issue an order directing the Defendant to release their claim of tax payments, lien or any security interest in Plaintiffs' property as a result of their illegal conduct, and to access other penalties as the law allows and to grant Plaintiffs' cost of suit, legal fees, and to grant Plaintiffs punitive damages to prevent NANA from similar conduct in the future.

August 1-2015

Respectfully submitted,

Robin Zahran

Abbas Zahran, Trustee

5457 Bayshore Dr. Trust

Karen Zahran



Exh. 1

Feb-05-03    03:49pm    From-Mortgage Department          248 457 5560          T-541   P.006/006   F-478

VOL 886 PAGE909          **MORTGAGE**          DOC#: 644395

DOCUMENT NUMBER

|                                          | Recorded |
|                                          | FEB. 11, 2003 AT 02:48PM |

NAME & RETURN ADDRESS
ABN AMRO MORTGAGE GROUP, INC.          MARILYN JADIN
A DELAWARE CORPORATION                 REGISTER OF DEEDS
340 EAST BIG BEAVER                    DOOR COUNTY, WI

TROY, MICHIGAN  48083                  Fee Amount:      $45.00

PARCEL IDENTIFIER NUMBER                Tract Indexed
022-02-0628261202 & 02020628261203

_____ [Space Above This Line For Recording Data] _____   30000525 P3

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated FEBRUARY 5, 2003 together with all Riders to this document.
(B) "Borrower" is
            THE 5457 BAY-SHORE DRIVE TRUST, DATED
            FEBRUARY 5, 2003
            ABBAS ZAHRAN, TRUSTEE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is ABN AMRO MORTGAGE GROUP, INC. A DELAWARE CORPORATION

Lender is a DELAWARE CORPORATION
organized and existing under the laws of THE STATE OF DELAWARE
0214331640

WISCONSIN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3050  1/01

-6(WI) (0005).02                                                           20048-01
Page 1 of 16          Initials: A.Z.
VMP MORTGAGE FORMS - (800)521-7291

BOA0013

VOL 886 PAGE 910

Lender's address is 4242 NORTH HARLEM AVENUE
NORRIDGE, ILLINOIS  60634
Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated January 24, 2003
The Note states that Borrower owes Lender Five Hundred Six Thousand and 00/100
                                                                    Dollars
(U.S. $506,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than February 1, 2033
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0214331640

-6(WI) (0008).02          Page 2 of 15          Initial:          Form 3050  1/01

003314

BOA0014

VOL **886** PAGE**911**

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the
COUNTY                of                DOOR
[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
SEE ATTACHED LEGAL DESCRIPTION.

which currently has the address of 5457 BAYSHORE DRIVE
                                                                                    [Street]
STURGEON BAY                          [City], Wisconsin 54235                    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this
0214331640

-6(WI) (0005).02                    Page 3 of 16                        Form 3050   1/01

003315

Feb-05-03   04:33pm   From-Mortgage Department        240 487 6660        T-476   P.013/020   F-394

VOL 886 PAGE 912

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0214331640

@D -6(WI) (0006).02                    Page 4 of 15            Initials: A Z        Form 3050   1/01

20640-04

- 003316

## VOL 886 PAGE 913

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

0214331640

MI-6(WI) (0005).02                                    Page 5 of 15                  Initials _____      Form 3050   1/01

BOA0017

## VOL 886 PAGE 914

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0214391640

-6(WI) 0004.02                    Page 6 of 15                        Form 3050  1/01

003318

BOA0016

## VOL 886 PAGE 915

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable

0214331640

-6(WI) (0005).02                    Page 7 of 16          Initials: [signature]    Form 3050  1/01

003313

VOL- 8860 PAGE916

Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender required) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

0214331640

-6(WI) 0000ELG3                Page 8 of 15            Initial: A.Z.            Form 3060  1/01

• 003320

BOA0020

Feb-05-03   04:40pm   From-Mortgage Department          248 457 6560          T-473   P.018/328   P-134

VOL 886 PAGE 917

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

0214331640

-6(WI) (0005).02                    Page 9 of 13                              Form 3050   1/01

003321

BOA0021

Feb-05-03   04:42pm   From-Mortgage Department                    248 457 6660        T-475   P.018/028   F-824

VOL 886 PAGE 918

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0214331640

42110 -01WM (0005L02                        Page 10 of 18         Initials                Form 3030   1/01
                                                                                          20048-10

003322

BOA0022

VOL 886 PAGE 919

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0214331640

-6(WI) (0005).02          Page 11 of 16      Initials_____      Form 3050 1/01

003323

BOA0023

## VOL 886 PAGE 920

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0214331640

-6(WI) 10000x.02                    Page 12 of 16                              Form 3050   1/01
                                                                               20048-12

BOA0024

Feb-05-03  04:47pm  From-Mortgage Department          248 457 6860          T-476  P.022/028  F-824

VOL. **886** PAGE **921**

## NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following orders: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Accelerated Redemption Periods.** If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

**25. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

0214331640

-6(WI) (0008.02                                    Page 16 of 16          Initials: _____          Form 3050  1/01
                                                                                                   20448-46

• **003325**

Feb-05-03   04:40pm   From-Mortgage Department          248 457 5860      T-475   P.023/029   F-324

VOL **886** PAGE**922**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

THE 5457 BAY SHORE DRIVE TRUST ____
|_____| DATED FEBRUARY 5, 2003
BY,

_____          _____ (Seal)
                                   ABBAS ZAHRAN, TRUSTEE        -Borrower

_____          _____ (Seal)
                                                                -Borrower

_____ (Seal)       _____ (Seal)
              -Borrower                                         -Borrower

_____ (Seal)       _____ (Seal)
              -Borrower                                         -Borrower

_____ (Seal)       _____ (Seal)
              -Borrower                                         -Borrower

0214331640

-6(WI) (0005).02                   Page 14 of 18                Form 3050   1/01
                                                               20815-14

• 003326

BOA0026

Feb-05-03   04:49pm   From-Mortgage Department          248 437 8560         T-476   P.024/028   F-424

VOL **886** PAGE **923**

STATE OF WISCONSIN, New York                                    County ss:
   The foregoing instrument was acknowledged before me this  FEBRUARY 5, 2003
by  ABBAS ZAHRAN, TRUSTEE OF THE 5457 BAY SHORE DRIVE TRUST
DATED FEBRUARY 5, 2003

                                                                     Seal
                                                                  Affixed

My Commission Expires:

                                      Notary Public, State of Wisconsin  New York

                         This instrument was prepared by

                         BRANDI DECATOR

                                    KAREN S. SWIFT
                              Notary Public, State of New York
                                    No. 5048142
                              Qualified in Onondaga County
                      Commission Expires August 14, 2005

0214331640

C202-51(WI) #0061.01                    Page 15 of 15                    Form 3050   1/01
                                                                        23048-15

003327

BOA0027

F-315

# INITIAL-PERIOD-FIXED
## 2/1 to 10/1
# ADJUSTABLE-RATE NOTE
(1 Year Treasury Index—Rate Caps)

0214331640

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

(Date) FEBRUARY 05, 2003

(City)

5457 BAYSHORE

COUNTY

(State)

(Property Address)

WI 54735

1. **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 506,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ABN AMRO Mortgage Group, Inc., organized and existing under the laws of the State of Delaware. I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder.

2. **INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.750 %. The interest rate that I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the first day of each month beginning on APRIL 01 2003. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If on MARCH 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at ABN AMRO Mortgage Group, Inc., 2600 West Big Beaver Road, Troy, Michigan 48084 or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,639.54. This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of MARCH 2006, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of 4:00 p.m. EST on the 45th day before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 3/4 percentage points (2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 6.750 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points ( 2.0 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.750 %.

Loan Number: 0214331640

MULTISTATE FIXED/ADJUSTABLE RATE NOTE-Nonassumable Fixed-Single Family-Freddie Mac UNIFORM INSTRUMENT
1402 3665 (12/00)

Borrowers Initials: R-2 [initials]

5393 1/01
(Page 1 of 3)

EXHIBIT 1

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my overdue payment and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by the Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Loan Number: 0214331640

Borrowers Initials: R.Z. [signature]

MULTISTATE FIXED/ADJUSTABLE RATE NOTE—Nonassumable Fixed—Single Family—Freddie Mac UNIFORM INSTRUMENT
MLO 2205 (15/00)

Form 3593 1/01
(Page 2 of 4)

**(A) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 18(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ROBIN ZAHRAN , INDIVIDUALLY        -Borrower

_____ (Seal)
KAREN A. ZAHRAN , INDIVIDUALLY     -Borrower

_____ (Seal)
ABBAS ZAHRAN , TRUSTEE             -Borrower

_____ (Seal)
                                   -Borrower

(Sign Original Only)

Loan Number:  0214331640

Borrowers Initials: _____

MULTISTATE FIXED/ADJUSTABLE RATE NOTE-Nonassumable Fixed-Single Family-Freddie Mac UNIFORM INSTRUMENT
MLO 2205 (12/00)

Form 3501 DP1
(Page 3 of 4)

(A). UNTIL MY INITIAL FIXED INTE..... ATE CHANGES TO AN ADJUSTABLE I..... T RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUM..... S DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ROBIN ZAHRAN, INDIVIDUALLY          Borrower

X _____ (Seal)
KAREN A. ZAHRAN, INDIVIDUALLY       Borrower

_____ (Seal)
ABBAS ZAHRAN, TRUSTEE               Borrower

_____ (Seal)
                                    Borrower

(Sign Original Only)

Loan Number: ___0214331640___

Borrowers' Initials: _R-Z_ _Kg_

MULTISTATE FIXED/ADJUSTABLE RATE NOTE-Nonassumable Fixed-Single Family-Freddie Mac UNIFORM INSTRUMENT
ISLO 2205 (12/00)

Form 3501 1/01
(Page 5 of 6)

Exhibit 2

Exh. 2

**LaSalle Bank NA**

**LASALLE BANKS**

**Consumer Lending Department**
**4747 West Irving Park Road**
**Chicago, IL 60641**
**(800) 243-5773**

August 22, 2003

Robin Zahran
Karen Zahran
718 Acorn Hill Ln
Oak Brook, IL 60523

RE: Account # 2057300559643

Dear Mr and Mrs Zahran,

Please be assured that all corrections of our records have been made. We have updated the above account to show as a home equity line of credit.

Universal data forms have been sent to all the major credit bureaus to reflect our corrections. Please allow time for the credit bureaus to correct their systems.

We regret any inconvenience this error has caused you. Please accept our apology in regards to this matter. If you require further assistance, please do not hesitate to contact our Loan Services area at 1-800-783-0300.

Sincerely,

Correspondence Coordinator
Consumer Lending Department

000527

**LaSalle Bank NA**

**LASALLE BANKS**

**Consumer Lending Department**
4747 West Irving Park Road
Chicago, IL 60641
(800) 243-5773

August 25, 2003

Robin Zahran
Karen Zahran
718 Acorn Hill Ln
Oak Brook, IL 60523

RE: Account # 2057300559643

Dear Mr and Mrs Zahran,

Please be assured that all corrections of our records have been made. We have updated the above account to read as a home equity line of credit..

Universal data forms have been sent to all the major credit bureaus to reflect our corrections. Please allow time for the credit bureaus to correct their systems.

We regret any inconvenience this error has caused you. Please accept our apology in regards to this matter. If you require further assistance, please do not hesitate to contact our Loan Services area at 1-800-783-0300.

Sincerely,

Correspondence Coordinator
Consumer Lending Department

(1) – 1 – 800 – 852 – 5236        Belinda Montanez

(2)        00 21 43 31640        Trust

3300214 33 1640

000526

 **ABN·AMRO**

ABN AMRO Mortgage Group, Inc.

September 22, 2003

ROBIN ZAHRAN
KAREN A ZAHRAN
718 ACORN HILL LANE
OAK BROOK, IL 60523

Re: Mortgage Loan Number: 0214331640

Dear MR AND MRS ZAHRAN :

You have requested that the Mortgagee consent to a transfer of
ownership in the subject property from the present Mortgagor(s)
to a land/living trust. The Mortgagee will not consent to such
transfer unless the following conditions are met:

1. The Mortgagee receives a copy of the transfer deed, and a copy
   of that portion of the Trust Agreement showing 100% of the
   beneficial interest in a revocable trust to be owned by our
   Mortgagor(s), and only by our Mortgagor(s);

2. The enclosed form must be signed by the beneficiaries and the
   trustee and returned, bearing the original signatures, to
   ABN AMRO Mortgage Group.

Upon receipt of these items, the request of the transfer to the
land/living trust will be completed.

If you have any questions regarding this matter, please feel free to
contact our Customer Service Department at (800) 788-8900.

Sincerely,

Nawal Antoin
Special Loan Servicing Representative
Customer Service Department

Enclosure

SL412 004 S90

**000351**

2600 West Big Beaver Road, Troy, Michigan 48084-3318
Affiliates: ABN AMRO Mortgage, LaSalle Bank NA, LaSalle Home Mortgage, Standard Federal



TransUnion

2 Baldwin Place
1510 Chester Pike
Crum Lynne, PA 19022
610-546-4640

September 26, 2003

LaSalle Bank FSB
4747 W. Irving Park Rd
Chicago, IL 60641

Re:     Robin Zahran

Dear Sir/Madam:

Enclosed is an amended copy of a credit file revised as a result of a recent investigation conducted by TransUnion on behalf of the consumer. Our records indicate that during the past six months you have accessed this consumer's credit file using TransUnion's database to make a credit granting decision.

Any changes made on this report were in compliance with procedures outlined by Section 611 of the Fair Credit Reporting Act. You may be assured that any deletions or changes on the enclosed report were made only after careful investigation with the original source.

As a result of our recent investigation, you may wish to reconsider this consumer's application and re-evaluate your decision.

Sincerely,

Eileen Little
Group Manager of
Consumer Relations – East

**⊷ 000416**

**ABN·AMRO**

ABN AMRO Mortgage Group, Inc.

October 20, 2003

5457 Bay Shore Drive Trust
718 Acorn Hill Ln
Oak Brook IL 60523 2707

Re: Mortgage Loan Number:   0214331640

Dear Mortgage Customer:

We are in receipt of your document(s) reflecting a title change to
the above-captioned account. Our records have been changed accordingly.

Due to this change of title, it will be necessary for you to contact
your homeowners insurance agent requesting a similar change to the
named insured. This endorsement to your policy should avoid any
discrepancy in the event of a future claim.

If you have any questions please contact our Customer Service Department
at (800) 783-8900.

ABN AMRO Mortgage Group, Inc.
Nawal Antoin
Customer Service Department

SL417/001/S90

•-- 000350

**LaSalle Bank**
ABN AMRO

LaSalle Bank N.A.
135 South LaSalle Street, Suite 140
Chicago, Illinois 60603
(312) 904-2505
Fax: (312) 904-1455

Wealth Management

November 4, 2003

In regards to:

Robin Zahran
718 Acorn Hill LN
Oak Brook, IL 60523

Attention: AMEX

Dear Robin Zahran:

SUBJECT: HOME EQUITY LINE OF CREDIT #00120507300559643

We have communicated to the credit reporting agencies the fact that your HELOC is secured by a second mortgage on your primary residence.

Universal data forms have been sent to all the major credit bureaus to reflect our corrections.

Sincerely,

Dwayne H. Bass
Assistant Vice President
LaSalle Bank, N.A.

000398

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | .37¢ |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 4.42 |

Postmark Here  11/18/03

Sent To  LaSalle Bank

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, January 2001          See Reverse for Instructions

...mortgage interests in Zahran's residence at 718 Acorn Hill Lane, Oakbrook, IL, to be substituted for a first mortgage by a prospective creditor for the amount of $350,000 or at least for the amount of $200,000.

This is further a demand that LaSalle Bank stop and cease reporting to the credit bureaus Zahran's loan as "unsecured" and a revolving line of credit at the time it is a home equity mortgage in the amount of $500,000 secured by Zahran's residence and is recorded accordingly as a mortgage.

Please reply within 48 hours, otherwise legal action will be taken. We communicated to you this problem earlier on many occasions but to no avail.

Respectfully,

Robin Zahran

 **ABN·AMRO**                                                      ABN AMRO **Mortgage** Group, Inc.

November 28, 2003


Robin Zahran
Karen Zahran
718 Acorn Hill Ln
Oak Brook, IL  60523

RE: Mortgage Loan Number 0214331640

Dear Mortgagor(s):

This letter is in reference to the above listed account with
ABN AMRO Mortgage Group, Inc.

We have verified with Experian (formerly TRW), Trans Union and Equifax Credit
Bureaus that the above loan is not being reported under your social security numbers.

Please feel free to contact our Customer Service Department if
you have any questions concerning this matter at (800) 783-8900.

Sincerely,



ABN AMRO Mortgage Group, Inc.
Dawn Nakamura
Senior Customer Service Representative


DN/fw

**000349**

0214331640

December 9, 2003

Robin Zahran
Karen Zahran
718 Acorn Hill Ln
Oak Brook, IL  60523

RE: Mortgage Loan Number 0214331640

Dear Mortgagor(s):

This letter is in reference to the above listed account with
ABN AMRO Mortgage Group, Inc.

We have submitted a request with Experian (formerly TRW), Trans Union and Equifax
Credit Bureaus that the above loan be remove from the credit reporting under the name(s)
of Robin Zahran and Karen Zahran, showing social security numbers 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 and
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.

Please feel free to contact our Customer Service Department if
you have any questions concerning this matter at (800) 783-8900.

ABN AMRO Mortgage Group, Inc.
Dawn Nakamura
Senior Customer Service Representative

000412

BOA00193

 **ABN·AMRO**

ABN AMRO Mortgage Group, Inc.

December 11, 2003


Robin Zahran
Karen Zahran
718 Acorn Hill Ln
Oak Brook, IL  60523


RE: ~~Mortgage Loan Number:~~  0214331640

Dear Mortgagor(s):

This letter is in reference to the above listed account with
ABN AMRO Mortgage Group, Inc.

We have verified with Experian (formerly TRW), Trans Union and Equifax Credit
Bureaus that the above loan is not being reported under your social security numbers.

Please feel free to contact our Customer Service Department if
you have any questions concerning this matter at (800) 783-8900.

ABN AMRO Mortgage Group, Inc.
Dawn Nakamura
Senior Customer Service Representative


**000346**

**U.S. TRUST**

Bank of America Private Wealth Management

5457 Bay Shore Drive Trust
Robin Zahran
721 Acorn Hill Ln
Oak Brook IL  60523-2706

August 15, 2008

LaSalle Bank N.A. Loan Number 0110108354
New Bank of America Loan Number 3000052583

Last month we informed you that effective August 1, 2008 the servicing of your mortgage loan would be transferred from LaSalle Bank N.A. to Bank of America N.A. We have successfully completed the transition and have attached a payment coupon to assist you in making a payment. If you have already made your August payment, please disregard this message.

If you have not made your August payment, please follow the instructions below. As already communicated, we will not be assessing late fees for your August payment due to this transition.

You can make your payment with this coupon either by mailing it to the address below or taking your coupon to a banking center. Please make your check payable to Bank of America and include your new Bank of America loan number (identified above) on the check. If you are currently making your payment through a third party such as government allotment or bill-pay service, please advise them of your new account number and change the payee to Bank of America with the following payment address:

Bank of America
4161 Piedmont Parkway
Greensboro, NC 27410-8110
Attn: Payment Processing

If you have questions regarding your mortgage please contact your advisor or contact us at the toll free number listed below.

U.S. Trust Banking Services Team
Hours of Operation:

1.877.556.2171
Monday through Friday, 7 a.m. to 10 p.m. Eastern

Sincerely,

Mary Jo Herseth

Mary Jo Herseth
Market Executive, Illinois and Michigan
U.S. Trust, Bank of America Private Wealth Management

000386

U.S. Trust, Bank of America Private Wealth Management operates through Bank of America, N.A., LaSalle Bank N.A. and other subsidiaries of Bank of America Corporation. Bank of America, N.A., LaSalle Bank N.A., Members FDIC.

I7-133-74340

NEAL • GERBER • EISENBERG

Tonya G. Newman
Attorney at Law

Tel 312.269.8425
Fax 312.750.6509
tnewman@ngelaw.com

December 16, 2013

## VIA UNITED STATES MAIL AND ELECTRONIC MAIL

Mr. Robin Zahran
725 Acorn Hill Lane
Oak Brook, Illinois 60523
robinzahran@sbcglobal.net

Mr. Douglas A. Cipriano
Law Office of Douglas A. Cipriano, P.C.
1730 Heather Hill Crescent
Flossmoor, Illinois 60422
doug.cipriano@sbcglobal.net

> Re:   *Zahran v. Bank of America, NA*
>        *Account Number 873418835*

Dear Messrs. Zahran and Cipriano:

This letter will follow up on and confirm my conversations with both of you before and after court this morning regarding the check Mr. Zahran attempted to give me with respect to the above-referenced account. In particular, Mr. Zahran asked me to accept a check in the amount of $2,295.30, which he stated represented the current payment due on the above-referenced account.

It has been many months since Mr. Benjamin agreed to transmit a payment on the borrower's behalf, and even then only because Mr. Zahran had claimed that payments had been returned to him for no apparent reason.[1] Since then Mr. or Mrs. Zahran has been successful in delivering the borrower's payments directly to the Bank, either by mail or by making the payment at a branch, according to Mr. Zahran's own admission. I initially received the check from Mr. Zahran's hand not knowing what it was, and was naturally surprised when I realized it was a check and that Mr. Zahran was asking me to assume responsibility for its transmission to the Bank. I inquired why I was now being asked to receive a payment on the account, and whether there was any reason that borrower could not make the payment directly. Mr. Zahran informed me that when Karen Zahran is in Wisconsin, she usually mails payments on the above-referenced account directly to Bank of America; however, if a payment is late, it is delivered directly to a Bank of America branch. Mr. Zahran advised me that the payment he asked me to accept is not late – he believed that it was due on December 17. Mr. Zahran did not indicate any

---

[1]   Mr. Zahran disputed my representation that Mr. Benjamin had not been asked to transmit to the Bank any payments for more than several months. However, a review of our records did not find any evidence that we have received or transmitted a payment after March 2013. Please send us any evidence you have that indicates otherwise.

Exhibit 3

Exh. 3



**Bank of America**

www.bankofamerica.com

OAKBROOK ASSOCIATES FINA
1301 W 22ND ST STE 815
OAK BROOK IL 60523-337715

October 14, 2006

Account No.: 749523004 206 282

Dear Oakbrook Associates Fina,

The above-referenced account is now past due. Your account may be closed if we
do not receive a payment amount of $331.00 by your next due date. If you are
unable to make a payment, we need to speak with you to discuss your options.
Please call 1-800-310-5587, Monday through Thursday from 8 a.m. to 9 p.m.,
Friday, 8 to 7, or Saturday, 9 to 2 (Eastern time). Our knowledgeable Account
Managers are ready to assist you.

Sincerely,

**Tony Green**
Vice President

Consumer Finance department

P.S. If you already mailed your payment, please disregard this notice. If you
have not sent your payment, please mail it today to P.O. Box 15102,
Wilmington, DE 19850-5102. If you prefer, you can make your payment over the
telephone (a fee will apply) by calling 1-800-310-5587, Monday through
Thursday from 8 a.m. to 9 p.m., Friday, 8 to 7, or Saturday, 9 to 2 (Eastern
time).

✔ 000379





**Correct errors in your Credit Report**
Initiate Online Dispute ▶

# Negative Accounts

Show All Account Details

Accounts that contain a negative account status. Accounts not paid as agreed generally remain on your credit file for 7 years from theÂ date the account first became past due leading to the current not paid status. Late Payment History generally remains on your credit file for 7 years from the date of the late payment.

## Open Accounts

Date of last reported update.

Condition of account when last updated by creditor or otherwise.

| Account Name | Account Number | Date Opened | Balance | Date Reported | Past Due | Status ⬇ | Credit Limit |
|---|---|---|---|---|---|---|---|
| BANK OF AMERICA Show Details | 133300005XXXX | 02/2003 | $465,436 | 11/2009 | $70,627 | 120+ DAYS PAST DUE | |
| BANK OF AMERICA, N.A Show Details | 87341XXXX | 02/2003 | $465,436 | 03/2011 | $94,605 | 120+ DAYS PAST DUE | |
| REPUBLIC BANK OF CHI Show Details | 50075260XXXX | 06/2005 | $1,014,869 | 09/2011 | | PAYS AS AGREED | $1,015,660 |
| SLC STUDENT LOAN TRU Show Details | 3488047XXXX | 08/2007 | $21,286 | 10/2011 | $0 | PAYS AS AGREED | |


**Correct errors in your Credit Report**
Initiate Online Dispute ▶

# Mortgage Accounts

<u>Show All Account Details</u>

Mortgage accounts include first mortgages, home equity loans, and any other loans secured by real estate you own.

## Open Accounts

Date of last reported update.

Condition of account when last updated by creditor or otherwise.

| Account Name | Account Number | Date Opened | Balance | Date Reported | Past Due | Status ↓ | Credit Limit |
|---|---|---|---|---|---|---|---|
| BANK OF AMERICA <u>Show Details</u> | 133300005XXXX | 02/2003 | $465,436 | 11/2009 | $70,627 | 120+ DAYS PAST DUE | |
| BANK OF AMERICA, N.A <u>Show Details</u> | 87341XXXX | 02/2003 | $465,436 | 03/2011 | $94,605 | 120+ DAYS PAST DUE | |
| REPUBLIC BANK OF CHI <u>Show Details</u> | 50075260XXXX | 06/2005 | $1,014,869 | 09/2011 | | PAYS AS AGREED | $1,015,660 |

## Closed Accounts

Date of last reported update.

Condition of account when last updated by creditor or otherwise.

| Account Name | Account Number | Date Opened | Balance | Date Reported | Past Due | Status | Credit Limit |
|---|---|---|---|---|---|---|---|
| SLC STUDENT LOAN TRU Show Details | 3488047XXXX | 01/2007 | $46,393 | 10/2011 | $0 | PAYS AS AGREED | |

## Closed Accounts

Date of last reported update.

Condition of account when last updated by creditor or otherwise.

| Account Name | Account Number | Date Opened | Balance | Date Reported | Past Due | Status | Credit Limit |
|---|---|---|---|---|---|---|---|
| BANK OF AMERICA Show Details | 549099399708XXXX | 05/2000 | $24,403 | 08/2011 | $3,356 | CHARGE-OFF | $0 |
| BANK OF AMERICA Show Details | 426429699828XXXX | 07/2002 | $41,183 | 11/2009 | $3,466 | CHARGE-OFF | $0 |
| BARCLAYS BANK DELAWA Show Details | 546638840116XXXX | 03/2006 | $0 | 07/2011 | | CHARGE-OFF | $27,912 |
| BARCLAYS BANK DELAWA Show Details | 439707000160XXXX | 03/2006 | $0 | 07/2011 | | CHARGE-OFF | $10,864 |
| LASALLE BANK Show Details | 300011010XXXX | 02/2003 | $0 | 08/2008 | | 120+ DAYS PAST DUE | |
| LASALLE NATIONAL BAN Show Details | 12050730055XXXX | 09/2002 | $0 | 10/2008 | | CHARGE-OFF | $500,000 |
| PNC BANK Show Details | 448909809010XXXX | 08/2006 | $0 | 10/2011 | | CHARGE-OFF | $100,000 |

©2011 Equifax, Inc., All rights reserved   Privacy Policy  |  Site Terms of Use  |  FACT Act

# EQUIFAX

## CREDIT FILE : December 31, 2012

**Confirmation # 2352028006**

Personal Identification Information *(This section includes your name, current and previous addresses, and any other identifying information reported by your creditors.)*

Name On File: Robin Zahran
Social Security #: 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    Date of Birth: April 14, 1948
Current Address: 721 Acorn Hill Ln, Oak Brook, IL 60523 Reported: 12/2012
Previous Address(es): 718 Acorn Hill Ln, Hinsdale, IL 60523 Reported: 12/2012

Please address all future correspondence to:


www.investigate.equifax.com


Equifax Information Services LLC
P. O. Box 105069
Atlanta, GA 30348


Phone: (877) 528-6481
M - F 9:00am to 5:00pm in your time zone.

In order to speak with a Customer Service Representative regarding the specific information contained in this credit file, you must call **WITHIN 60 DAYS** of the date of this credit file **AND** have a copy of this credit file along with the confirmation number.

## Credit Account Information

For your security, the last 4 digits of account number(s) have been replaced by *) (This section includes open and closed accounts reported by credit grantors)

### Account Column Title Descriptions:

Account Number - The Account number reported by credit grantor
Date Acct. Opened - The Date that the credit grantor opened the account
High Credit - The Highest Amount Charged
Credit Limit - The Highest Amount Permitted
Terms Duration - The Number of Installments or Payments
Terms Frequency - The Scheduled Time Between Payments
Months Reviewed - The Number of Months Reviewed
Activity Designator - The Most Recent Account Activity
Creditor Class - The Type of Company Reporting The Account
Date Reported - Date of Last Reported Update
Balance Amount - The Total Amount Owed as of the Date Reported
Status - Condition of Account When Last Updated by Creditor or Otherwise

Amount Past Due - The Amount Past Due as of the Date Reported
Date of Last Paymnt - The Date of Last Payment
Actual Pay Amt - The Actual Amount of Last Payment
Sched Pay Amt - The Requested Amount of Last Payment
Date of 1st Delinquency - The Date of First Delinquency
Date of Last Actvty - The Date of the Last Account Activity
Date Maj Delq Rptd - The Date the 1st Major Delinquency Was Reported
Charge Off Amt - The Amount Charged Off by Creditor
Deferred Pay Date - The 1st Payment Due Date for Deferred Loans
Balloon Pay Amt - The Amount of Final(Balloon) Payment
Balloon Pay Date - The Date of Final(Balloon) Payment
Date Closed - The Date the Account was Closed

### Account History Status Code Descriptions:

| | | |
|---|---|---|
| 1 : 30-59 Days Past Due | 5 : 150-179 Days Past Due | J : Voluntary Surrender |
| 2 : 60-89 Days Past Due | 6 : 180 or More Days Past Due | K : Repossession |
| 3 : 90-119 Days Past Due | G : Collection Account | L : Charge Off |
| 4 : 120-149 Days Past Due | H : Foreclosure | |

American Express    PO Box 981537 El Paso TX 79998-1537 : (800) 874-2717

| Account Number | | Date Opened | High Credit | Credit Limit | | Terms Duration | Terms Frequency | | Months Revd | Activity Designator | | Creditor Classification |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 990505746* | | 12/04/2002 | $6,063 | $4,300 | | | | | 15 | | | |

| As of | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Paymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/2012 | $4,095 | | | | | | 12/2012 | | | | | | |

Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Authorized User; ADDITIONAL INFORMATION - Credit Card;

( On Next Page )

2352028006APP-001310902- 21

**American Express** PO Box 981537 El Paso TX 79998-1537 (800) 974-

| Account Number | | | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | | Months Revd | Activity Designator | | | Creditor Classification | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| -00847995001532* | | | 04/01/1996 | $7,496 | | | | | 1 | | | | | |
| Name As of | Balance | Amount | Date of | Actual | | Date of 1st | Date of | Date Maj | Charge Off | Deferred Pay | Balloon Pay | Balloon | Date |
| Date Reported | Amount | Past Due | Last Payment | Payment Amount | | Delinquency | Last Activity | Del. 1st Rptd | Amount | Start Date | Amount | Pay Date | Closed |
| 04/01/2005 | $0 | | | | | | 09/2004 | | | | | | |

Status - Pays As Agreed; Type of Account - Revolving; Whose Account - Individual Account; ADDITIONAL INFORMATION - Account Closed By Consumer;

**Bank of America** PO Box 982235 El Paso TX 79998-2235

| Account Number | | | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | | Months Revd | Activity Designator | | | Creditor Classification | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 549099399708* | | | 05/04/2000 | | $0 | | Monthly | | 73 | | | | | |
| Items As of | Balance | Amount | Date of | Actual | Scheduled | Date of 1st | Date of | Date Maj | Charge Off | Deferred Pay | Balloon Pay | Balloon | Date |
| Date Reported | Amount | Past Due | Last Payment | Payment Amount | Paymnt Amount | Delinquency | Last Activity | Del. 1st Rptd | Amount | Start Date | Amount | Pay Date | Closed |
| 12/31/2012 | $24,403 | $3,356 | 08/2007 | $1,000 | $244 | 11/2007 | | 04/2008 | $22,670 | | | | |

Status - Charge Off; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Individual Account; ADDITIONAL INFORMATION - Charged Off Account; Credit Card;

Account History 06/2012 02/2010
with Status Codes    L    L

**Bank of America** PO Box 982235 El Paso TX 79998-2235

| Account Number | | | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | | Months Revd | Activity Designator | | | Creditor Classification | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 426429699828* | | | 07/04/2002 | | $0 | | Monthly | | 87 | | | | | |
| Items As of | Balance | Amount | Date of | Actual | Scheduled | Date of 1st | Date of | Date Maj | Charge Off | Deferred Pay | Balloon Pay | Balloon | Date |
| Date Reported | Amount | Past Due | Last Paymnt | Payment Amount | Paymnt Amount | Delinquency | Last Activity | Del. 1st Rptd | Amount | Start Date | Amount | Pay Date | Closed |
| 12/31/2012 | $41,183 | $3,466 | 03/2008 | $19,000 | $411 | 05/2008 | | 10/2008 | $41,183 | | | | |

Status - Charge Off; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Individual Account; ADDITIONAL INFORMATION - Charged Off Account; Credit Card;

Account History 06/2012
with Status Codes    L

**Bank of America, N.A.** 4161 Piedmont Pkwy Greensboro NC 27410-8110 (800) 451-6362

| Account Number | | | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | | Months Revd | Activity Designator | | | Creditor Classification | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 87341* | | | 02/28/2003 | $506,000 | | 30Y | Monthly | | 28 | | | | | |
| Items As of | Balance | Amount | Date of | Actual | Scheduled | Date of 1st | Date of | Date Maj | Charge Off | Deferred Pay | Balloon Pay | Balloon | Date |
| Date Reported | Amount | Past Due | Last Paymnt | Payment Amount | Paymnt Amount | Delinquency | Last Activity | Del. 1st Rptd | Amount | Start Date | Amount | Pay Date | Closed |
| 12/31/2012 | $407,053 | $0 | 11/2012 | | $2,205 | | 10/2012 | | | | | | |

Status - Pays As Agreed; Type of Account - Mortgage; Type of Loan - Conventional Re Mortgage; Whose Account - Individual Account; ADDITIONAL INFORMATION - Real Estate Mortgage; Conventional Mortgage;

| Account History | 09/2011 | 08/2011 | 07/2011 | 06/2011 | 05/2011 | 04/2011 | 03/2011 | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/2010 | 09/2010 | 08/2010 | 07/2010 | 06/2010 | 05/2010 | 04/2010 | 03/2010 | 02/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Status Codes | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |

**Bank of America, N.A.** 4161 Piedmont Pkwy Greensboro NC 27410-8110 (800) 451-6362

| Account Number | | | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | | Months Revd | Activity Designator | | | Creditor Classification | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 873461* | | | 02/24/2003 | $506,000 | | 30M | Monthly | | 28 | | | | | |
| Items As of | Balance | Amount | Date of | Actual | Scheduled | Date of 1st | Date of | Date Maj | Charge Off | Deferred Pay | Balloon Pay | Balloon | Date |
| Date Reported | Amount | Past Due | Last Paymnt | Payment Amount | Paymnt Amount | Delinquency | Last Activity | Del. 1st Rptd | Amount | Start Date | Amount | Pay Date | Closed |
| 12/24/2012 | $404,634 | | 10/2012 | | $2,205 | | 10/2012 | | | | | | |

Status - Pays As Agreed; Type of Account - Mortgage; Type of Loan - Conventional Re Mortgage; Whose Account - Individual Account; ADDITIONAL INFORMATION - Real Estate Mortgage; Conventional Mortgage;

| Account History | 09/2011 | 08/2011 | 07/2011 | 06/2011 | 05/2011 | 04/2011 | 03/2011 | 02/2011 | 01/2011 | 12/2010 | 11/2010 | 10/2010 | 09/2010 | 08/2010 | 07/2010 | 06/2010 | 05/2010 | 04/2010 | 03/2010 | 02/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| with Status Codes | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |

-(ntinued On Next Page )

2352028006APP-001310902- 21 - 53 - CS

| | | | |
|---|---|---|---|
| Terms: | Revolving | | |
| High Balance: | $10,566.00 | $10,566.00 | $10,566.00 |
| Limit: | $10,000.00 | | $10,000.00 |
| Past Due: | | | $0.00 |
| Payment Status: | Current | Pays account as agreed | Unrated |
| Comments: | Credit line closed-consumer request-reported by subscriber | | Account closed by consumer |

## 24-Month Payment History

| Date: | Apr 03 | May 03 | Jun 03 | Jul 03 | Aug 03 | Sep 03 | Oct 03 | Nov 03 | Dec 03 | Jan 04 | Feb 04 | Mar 04 | Apr 04 | May 04 | Jun 04 | Jul 04 | Aug 04 | Sep 04 | Oct 04 | Nov 04 | Dec 04 | Jan 05 | Feb 05 | Mar 05 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Experian: | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | ND | OK | | | | |
| Equifax: | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |
| TransUnion: | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | ND | ND | | | | |

## LASALE NT BK

| | EXPERIAN | EQUIFAX | TRANSUNION |
|---|---|---|---|
| Account Name: | | | LASALE NT BK |
| Account Number: | | | 1205073XXXX |
| Acct Type: | | | Overdraft / reserve checking account |
| Acct Status: | | | Closed |
| Monthly Payment: | | | |
| Date Open: | | | 9/27/2002 |
| Balance: | | | $0.00 |
| Terms: | | | |
| High Balance: | | | $499,740.00 |
| Limit: | | | $500,000.00 |
| Past Due: | | | $0.00 |
| Payment Status: | | | Payment after charge off / collection |
| Comments: | | | Settled; less than full balance |

## 24-Month Payment History

| Date: | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Experian: | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Equifax: | | | | | | | | | | | | | | | | | | | | | | | | |
| TransUnion: | | | | | | | | | | | | | | | | | | | | | | | | |

## LASALLE BANK

| | EXPERIAN | EQUIFAX | TRANSUNION |
|---|---|---|---|
| Account Name: | | LASALLE BANK | |
| Account Number: | | 300011010XXXX | |
| Acct Type: | | Real Estate | |
| Acct Status: | | Open | |
| Monthly Payment: | | $3,531.00 | |
| Date Open: | | 2/1/2003 | |
| Balance: | | $0.00 | |
| Terms: | | | |
| High Balance: | | $506,000.00 | |
| Limit: | | | |
| Past Due: | | | |

| | |
|---|---|
| Payment Status: | At least 120 days or more than four payments past due ACCOUNT TRANSFERRED OR SOLD |
| Comments: | REAL ESTATE MORTGAGE |

### 24-Month Payment History

| Date: | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 06 | 06 | 06 | 06 | 06 | 07 | 07 | 07 | 07 | 07 | 07 | 07 | 07 | 07 | 07 | 07 | 07 | 08 | 08 | 08 | 08 | 08 | 08 | 08 |
| Experian: | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax: | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | 90 | 120 | 120 | 120 | 90 | OK | 30 | 60 | 90 | 120 |
| TransUnion: | | | | | | | | | | | | | | | | | | | | | | | | |

**LASALLE NATIONAL BAN**

| | EXPERIAN | EQUIFAX | TRANSUNION |
|---|---|---|---|
| Account Name: | LASALLE NATIONAL N A | LASALLE NATIONAL BAN | |
| Account Number: | 12050730055XXXX | 12050730055XXXX | |
| Acct Type: | Home Equity Line Of Credit | Revolving or Option | |
| Acct Status: | Closed | Closed | |
| Monthly Payment: | | $2,614.00 | |
| Date Open: | 9/1/2002 | 9/1/2002 | |
| Balance: | | $0.00 | |
| Terms: | Revolving | | |
| High Balance: | $500,206.00 | $500,000.00 | |
| Limit: | $500,000.00 | | |
| Past Due: | | | |
| Payment Status: | Legally paid in full for less than the full balance | Bad debt & placed for collection & skip | |
| Comments: | Election of remedy - reported by subscriber | SETTLEMENT ACCEPTED ON THIS ACCOUNT PAID CHARGE OFF | |

### 24-Month Payment History

| Date: | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 09 | 09 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 |
| Experian: | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax: | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |
| TransUnion: | | | | | | | | | | | | | | | | | | | | | | | | |

**NATL CTY CRD**

| | EXPERIAN | EQUIFAX | TRANSUNION |
|---|---|---|---|
| Account Name: | | | NATL CTY CRD |
| Account Number: | | | 44890980XXXX |
| Acct Type: | | | Overdraft / reserve checking account |
| Acct Status: | | | Closed |
| Monthly Payment: | | | |
| Date Open: | | | 8/27/2006 |
| Balance: | | | $0.00 |
| Terms: | | | |
| High Balance: | | | $109,626.00 |
| Limit: | | | $100,000.00 |
| Past Due: | | | $0.00 |
| Payment Status: | | | Payment after charge off / collection |

LASALLE NATIONAL N A
Account Number: 12050730055....

PNC BANK
Account Number: 448909809010....

**Outcome:** Updated

**Outcome:** Updated

## Details Of Dispute Results

Back to top

Potentially Negative Items or items for further review

Back to top

This information is generally removed seven years from the initial missed payment that led to the delinquency. Missed payments and most public record items may remain on the credit report for up to seven years, except Chapters 7, 11 and 12 bankruptcies and unpaid tax liens, which may remain for up to 10 years. A paid tax lien may remain for up to seven years. Transferred accounts that have not been past due remain up to 10 years after the date the account was transferred.

---

**Payment history legend**

| | | | |
|---|---|---|---|
| OK | Current/Terms of agreement met | VS | Voluntarily surrendered |
| 30 | Account 30 days past due | R | Repossession |
| 60 | Account 60 days past due | PBC | Paid by creditor |
| 90 | Account 90 days past due | IC | Insurance claim |
| 120 | Account 120 days past due | G | Claim filed with government |
| 150 | Account 150 days past due | D | Defaulted on contract |
| 180 | Account 180 days past due | C | Collection |
| CRD | Creditor received deed | CO | Charge off |
| FS | Foreclosure proceedings started | CLS | Closed |
| F | Foreclosed | ND | No data for this time period |

---

Credit Items

**LASALLE NATIONAL N A**
Address:
3985 N MILWAUKEE AVE
CHICAGO, IL 60641
*No phone number available*

**Account Number:**
12050730055....

Address Identification Number:
0125480393

Status:
Paid in settlement.

**Status Details:**
This account is scheduled to continue on record until Apr 2014.
This item was updated from our processing of your dispute in May 2012.

Date Opened:
09/2002
Reported Since:
09/2002
Date of Status:
03/2008
Last Reported:
03/2008

**Type:**
Revolving
**Terms:**
NA
**Monthly Payment:**
$0
**Responsibility:**
Joint with ROBIN ZAHRAN

**Credit Limit/Original Amount:**
$500,000
**High Balance:**
$500,206
**Recent Balance:**
NA
**Recent Payment:**
NA

Payment History:

| 2008 | | | 2007 | | | | | | | | | | | | 2006 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG |
| CLS | 60 | 60 | 60 | 60 | 60 | 60 | 30 | 30 | OK | OK | OK | OK | 30 | 30 | OK | OK | OK | OK | OK |

| | | | | | | | 2005 | | | | | | | | | | | | 2004 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC |
| OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | | | | | | | | | | | 2003 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR |
| OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | | | 2002 | | | |
|---|---|---|---|---|---|---|
| MAR | FEB | JAN | DEC | NOV | OCT | SEP |
| OK | OK | OK | OK | OK | OK | OK |

**Account History:**
60 days past due as of Sep 2007 to Feb 2008
30 days past due as of Aug 2007, Jul 2007, Feb 2007, Jan 2007

**Creditor's Statement:** ·
Account legally paid in full for less than full balance.

**PNC BANK**
Address:
PO BOX 3180
PITTSBURGH, PA 15230
*No phone number available*

**Account Number:**
448909809010....

**Address Identification Number:**
0125480393

**Status:**
Paid in settlement. $109,626 written off.

**Status Details:**
This account is scheduled to continue on record until Mar 2015.
This item was updated from our processing of your dispute in May 2012.

| | | |
|---|---|---|
| **Date Opened:** 08/2006 | **Type:** Revolving | **Credit Limit/Original Amount:** $100,000 |
| **Reported Since:** 09/2006 | **Terms:** NA | **High Balance:** $109,626 |
| **Date of Status:** 10/2011 | **Monthly Payment:** $0 | **Recent Balance:** NA |
| **Last Reported:** 10/2011 | **Responsibility:** Joint with ROBIN ZAHRAN | **Recent Payment:** NA |

**Payment History:**

| 2011 | | | | | | | | | | 2010 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR |
| CLS | CO | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND |

| | | 2009 | | | | | | | | | | | | 2008 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL |
| ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | CO | 120 | 90 | 60 | 30 |

| | | | | | | 2007 | | | | | | | | | | | | 2006 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV |
| OK | OK | 60 | 30 | OK | 30 | 30 | OK | 30 | 30 | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | |
|---|---|
| OCT | SEP |
| OK | OK |

**Account History:**
Charge Off as of Sep 2011, Nov 2008
120 days past due as of Oct 2008
90 days past due as of Sep 2008
60 days past due as of Aug 2008, Apr 2008
30 days past due as of Jul 2008, Mar 2008, Jan 2008, Dec

AMERICA

PAST DUE

Bank of America

4161 Piedmont Pkwy
Greensboro, NC-274108110
(800) 669-6607

| | | | |
|---|---|---|---|
| Account Number: | 133300005XXXX | Status: | 120+ DAYS PAST DUE |
| Account Owner: | Joint Account | High Credit: | $506,000 |
| Type of Account: | Mortgage | Credit Limit: | |
| Term Duration: | 30 Years | Terms Frequency: | Monthly (due every month) |
| Date Opened: | 02/04/2003 | Balance: | $465,436 |
| Date Reported: | 06/04/2012 | Amount Past Due: | $70,627 |
| Date of Last Payment: | 02/2008 | Actual Payment Amount: | |
| Scheduled Payment Amount: | $3,531 | Date of Last Activity: | N/A |
| Date Major Delinquency First Reported: | | Months Reviewed: | 12 |
| Creditor Classification: | | Activity Designator: | N/A |
| Charge Off Amount: | | Deferred Payment Start Date: | |
| Balloon Payment Amount: | | Balloon Payment Date: | |
| Date Closed: | | Type of Loan: | Conventional RE Mortgage |
| Date of First Delinquency: | 03/2008 | | |
| Comments: | 180 Days past due | | |

81-Month Payment History

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2012 | * | * | * | * | * | | | | | | | |
| 2011 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2010 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2009 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | * |
| 2008 | * | * | * | * | * | * | * | * | * | | 120 | 180 |
| 2007 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2006 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2005 | | | | | | | | | * | * | * | * |

| BANK OF AMERICA, N.A | 87341XXXX | 02/26/2003 | $410,840 | 11/26/2012 | $0 | PAYS AS AGREED |
|---|---|---|---|---|---|---|

BANK OF AMERICA

4161 Piedmont Pkwy
Greensboro, NC-274108110
(800) 451-6362

| | | | |
|---|---|---|---|
| Account Number: | 87341XXXX | Status: | PAYS AS AGREED |
| Account Owner: | Individual Account. | High Credit: | $506,000 |
| Type of Account: | Mortgage | Credit Limit: | |
| Term Duration: | 30 Years | Terms Frequency: | Monthly (due every month) |

| Date Opened: | 02/26/2003 | Balance: | $410,840 |
|---|---|---|---|
| Date Reported: | 11/26/2012 | Amount Past Due: | $0 |
| Date of Last Payment: | 10/2012 | Actual Payment Amount: | |
| Scheduled Payment Amount: | $3,223 | Date of Last Activity: | 10/2012 |
| Date Major Delinquency First Reported: | | Months Reviewed: | 28 |
| Creditor Classification: | | Activity Designator: | N/A |
| Charge Off Amount: | | Deferred Payment Start Date: | |
| Balloon Payment Amount: | | Balloon Payment Date: | |
| Date Closed: | | Type of Loan: | Conventional RE Mortgage |
| Date of First Delinquency: | N/A | | |
| Comments: | Consumer disputes this account information | | |

81-Month Payment History

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2012 | * | * | * | * | * | * | * | 30 | 30 | * | | |
| 2011 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | * | * | * |
| 2010 | * | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 |
| 2009 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2008 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2007 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2006 | | * | * | * | * | * | * | * | | * | * | * |

## Closed Accounts

| Account Name | Account Number | Date Opened | Balance | Date Reported | Past Due | Status | Credit Limit |
|---|---|---|---|---|---|---|---|
| LASALLE NATIONAL BAN | 12050730055XXXX | 09/04/2002 | $0 | 06/04/2012 | | CHARGE-OFF | $500,000 |

LASALLE NATIONAL BANK

135 S La Salle St
Chicago, IL-606034177

| Account Number: | 12050730055XXXX | Status: | CHARGE-OFF |
|---|---|---|---|
| Account Owner: | Joint Account | High Credit: | |
| Type of Account : | Line of Credit | Credit Limit: | $500,000 |
| Term Duration: | | Terms Frequency: | Monthly (due every month) |
| Date Opened: | 09/04/2002 | Balance: | $0 |
| Date Reported: | 06/04/2012 | Amount Past Due: | $0 |
| Date of Last Payment: | 08/2007 | Actual Payment Amount: | $3,100 |
| Scheduled Payment Amount: | $2,614 | Date of Last Activity: | N/A |
| Date Major Delinquency First Reported: | 03/2008 | Months Reviewed: | 70 |
| Creditor Classification: | | Activity Designator: | N/A |
| Charge Off Amount: | | Deferred Payment Start Date: | |
| Balloon Payment Amount: | | Balloon Payment Date: | |

Equifax FACT Act

**Bank of America**

4161 Piedmont Pkwy
Greensboro, NC-274108110
(800) 669-6607

| | | | | |
|---|---|---|---|---|
| Account Number: | 133300005XXXX | | Status: | 120+ DAYS PAST DUE |
| Account Owner: | Joint Account | | High Credit: | $506,000 |
| Type of Account 🔲: | Mortgage | | Credit Limit: | |
| Term Duration: | 30 Years | | Terms Frequency: | Monthly (due every month) |
| Date Opened: | 02/04/2003 | | Balance: | $465,436 |
| Date Reported: | 06/04/2012 | | Amount Past Due: | $70,627 |
| Date of Last Payment: | 02/2008 | | Actual Payment Amount: | |
| Scheduled Payment Amount: | $3,531 | | Date of Last Activity: | N/A |
| Date Major Delinquency First Reported: | | | Months Reviewed: | 12 |
| Creditor Classification: | | | Activity Designator: | N/A |
| Charge Off Amount: | | | Deferred Payment Start Date: | |
| Balloon Payment Amount: | | | Balloon Payment Date: | |
| Date Closed: | | | Type of Loan: | Conventional RE Mortgage |
| Date of First Delinquency: | 03/2008 | | | |
| Comments: | 180 Days past due | | | |

81-Month Payment History

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2012 | * | * | * | * | * | | | | | | | |
| 2011 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2010 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2009 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | * |
| 2008 | * | * | * | * | * | * | * | * | * | * | 120 | 180 |
| 2007 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2006 | * | * | * | * | * | * | * | * | * | * | * | * |
| 2005 | | | | | | | | | * | * | * | * |

| | | | | | | |
|---|---|---|---|---|---|---|
| BANK OF AMERICA, N.A | 87341XXXX | 02/26/2003 | $410,840 | 11/26/2012 | $0 | PAYS AS AGREED |

**BANK OF AMERICA**

4161 Piedmont Pkwy
Greensboro, NC-274108110
(800) 451-6362

| | | | | |
|---|---|---|---|---|
| Account Number: | 87341XXXX | | Status: | PAYS AS AGREED |
| Account Owner: | Individual Account. | | High Credit: | $506,000 |
| Type of Account 🔲: | Mortgage | | Credit Limit: | |
| Term Duration: | 30 Years | | Terms Frequency: | Monthly (due every month) |
| Date Opened: | 02/26/2003 | | Balance: | $410,840 |

KAREN A ZAHRAN
Report As Of: 1/8/2013



# Credit Cards, Loans & Other Debt

Here you will find specific information on each account you opened, including current status and any past due information. Positive credit information remains on your report indefinitely. Creditor contact information has been provided in order to make it easier for you to resolve any issues.

---

### LASALLE NATIONAL N A

|  | Experian | Equifax | TransUnion |
|---|---|---|---|

Potentially Negative Closed

773-434-3322

3985 N MILWAUKEE AVE
CHICAGO, IL 60641

| | Experian | Equifax |
|---|---|---|
| Account Name | LASALLE NATIONAL N A | LASALLE NATIONAL BAN |
| Account # | 12050730055XXXX | 12050730055XXXX |
| Account Type | Home Equity Line Of Credit | Revolving or Option |
| Balance | | $71,792.00 |
| Past Due | | |
| Date Opened | 9/1/2002 | 9/1/2002 |
| Account Status | Closed | Closed |
| Mo. Payment | | $2,614.00 |
| Payment Status | Legally paid in full for less than the full balance | Bad debt & placed for collection & skip |
| High Balance | $500,206.00 | $500,000.00 |
| Limit | $500,000.00 | |
| Terms | Revolving | |
| Comments | Election of remedy - reported by subscriber | CHARGED OFF ACCOUNT HOME EQUITY |

#### 24/Mo Payment History

| | | 2010 | 2011 | | | | | | | | | | | | 2012 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Month** | DEC | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV |
| Experian | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | KD | | | | | |
| Equifax | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |

---

### NATL CTY CRD

| | Experian | Equifax | TransUnion |
|---|---|---|---|

Potentially Negative Closed

No Phone Provided

4661 EAST MAIN ST
COLUMBUS, OH 43251

| | TransUnion |
|---|---|
| Account Name | NATL CTY CRD |
| Account # | 44980080XXXX |
| Account Type | Overdraft / reserve checking account |
| Balance | $0.00 |
| Past Due | $0.00 |
| Date Opened | 8/27/2006 |
| Account Status | Closed |
| Mo. Payment | |
| Payment Status | Payment after charge off / collection |
| High Balance | $100,626.00 |
| Limit | $100,000.00 |
| Terms | |
| Comments | Dispute resolved; customer disagrees |

#### 24/Mo Payment History

| **Month** | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax | | | | | | | | | | | | | | | | | | | | | | | | |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |

---





# Credit Cards, Loans & Other Debt

Here you will find specific information on each account you opened, including current status and any past due information. Positive credit information remains on your report indefinitely. Creditor contact information has been provided in order to make it easier for you to resolve any issues.

---

**BARCLAYS BANK DELAWARE**

Potentially Negative Closed

302-255-8000

125 S WEST ST
WILMINGTON, DE 19801

| | Experian | Equifax | TransUnion |
|---|---|---|---|
| Account Name | BARCLAYS BANK DELAWARE | BARCLAYS BANK DELAWA | BRCLYSBANKDE |
| Account # | 432747000340XXXX | 43274700XXXX | 43274XXXX |
| Account Type | Credit Card | Revolving or Option | Revolving account |
| Balance | $0.00 | $0.00 | $0.00 |
| Past Due | $0.00 | | $0.00 |
| Date Opened | 8/1/2006 | 8/1/2006 | 8/9/2006 |
| Account Status | Closed | Closed | Closed |
| Mo. Payment | $0.00 | $0.00 | |
| Payment Status | Charge-off | Bad debt & placed for collection & skip | Payment after charge off / collection |
| High Balance | | | |
| Limit | $4,600.00 | $4,600.00 | $8,258.00 |
| Terms | Revolving | | $4,600.00 |
| Comments | Transferred to another lender or claim purchased | ACCOUNT TRANSFERRED OR SOLD; CHARGED OFF ACCOUNT | Purchased by another lender |

**24/Mo Payment History**

|  | 2010 | 2011 | | | | | | | | | | | | 2012 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | DEC | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV |
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax | | | | | | | | | | | | | | | | | | | | | | | | |
| TransUnion | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

---

**LASALE NT BK**

Potentially Negative Closed

312-443-2541

135 S LASALLE
CHICAGO, IL 60690

| | Experian | Equifax | TransUnion |
|---|---|---|---|
| Account Name | | | LASALE NT BK |
| Account # | | | 120507300XXX |
| Account Type | | | Overdraft / reserve checking account |
| Balance | | | |
| Past Due | | | |
| Date Opened | | | 9/27/2002 |
| Account Status | | | Closed |
| Mo. Payment | | | |
| Payment Status | | | Charged off as bad debt |
| High Balance | | | $499,740.00 |
| Limit | | | $500,000.00 |
| Terms | | | |
| Comments | | | Settled; less than full balance |

**24/Mo Payment History**

| Month | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax | | | | | | | | | | | | | | | | | | | | | | | | |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |

---

Personal Information    Report Summary    Bankruptcies    Credit Inquires    Credit Score

Exhibit 5

Exh. 5

Dec. 29. 2007 5:17PM   EDITORS INTERCHANGE

No. 0171  P. 2

**CREDITORS INTERCHANGE**
80 Holtz Drive, Buffalo, NY 14225
Phone: 716. 614. 7500
Fax: 716. 614. 7546
ci@creditorsinterchange.com

**CI Creditors Interchange**
*Your Complete Receivable Management Team*

12-28-07

ZAHRAN, ROBIN               11391394
721 ACORN HILL LN
OAK BROOK IL 60523-2706

Buffalo Office Hours (Eastern Time)
8:00AM-Midnight Monday-Thursday
8:00AM-9:00PM Friday
8:00AM-2:00PM Saturday
9:00AM-1:00PM Sunday

RE:  FIA CARD SERVICES, N.A.
     655 PAPERMILL RD
     WILMINGTON      DE-1411
     Reference #:  4264296301104292
     CI Account #:  11391394-MPC
     Original Creditor (if applicable):
     Balance Owing:  $ 62279.45

DEAR ROBIN ZAHRAN,

Creditors Interchange has been authorized by our client to settle your
account for 35% of your current balance. This settlement, provided the
terms are adhered to, shall be in the total amount of $21,804.00. The payment
agreement is $1804.00 due by 12/31/07 and $20,000.00 due by 1/15/08.
We are not obligated to renew this offer.

This settlement offer expires unless we receive your payments as listed above.
While it is not required, it is recommended you remit your payments in certified
funds via overnight mail to ensure timely receipt and processing by this office.

In the event your write-off balance exceeds $600.00, it may be your responsibility
to claim that amount as earned income on your tax return for the following year.
Your creditor may provide you with the necessary 1099C form and notify the IRS of
the amount of the write-off balance. If you should have any questions relative to
this settlement, our representative is trained to offer assistance.
Make your checks or money orders payable to Creditors Interchange.

This is an attempt to collect a debt and any information obtained will be used for
that purpose. This is a communication from a debt collector.

Sincerely,

FRANK SZLVINY
Collection Manager

SSS/??::cpu

Creditors Interchange Receivable Management, LLC is a Delaware limited
liability company.

Dec. 29. 2007  5:57PM        EDITORS INTERCHANGE



Creditors
Interchange

*Your Complete Receivable Management Team*

No. 0172    P. 2
**CREDITORS INTERCHANGE**
80 Holtz Drive, Buffalo, NY 14225
Phone: 716. 614. 7500
Fax: 716. 614. 7546
ci@creditorsinterchange.com

Creditors Interchange.

Date: 12/29/07

ZAHRAN, ROBIN
ZAHRAN, KAREN N
721 ACORN HILL LN
OAK BROOK IL 60523-2706

Client Name: FIA CARD SERVICES,N.A.
CI Account: 11585092-MPC ————➤
CL Account: 4264296301104292
Balance Owing: $ 62,279.45

Dear Robin Zahran,

This letter is intended to verify that we, Creditors Interchange has been authorized by our client, FIA Card Services, N.A., to accept 35% of your current balance as settlement in full for the above-mentioned account.

This settlement, provided the terms are adhered to, shall be in the total amount of $21,804.00. The settlement agreement is $1,804.00 due on 12/31/07 and $20,000.00 due on or before 01/15/08. Failure to comply with these agreed conditions will make this offer null and void.

Upon clearance of your payment, the above-mentioned account will be considered settled in full. The credit bureaus will be notified within (30) thirty days that your account is in a settled in full status.

A professional debt collector has sent this communication. This is an attempt to collect a debt. Any information obtained will be used for solely for that purpose.

Sincerely,

Ron Sylvin
1-877-770-6326 ext 5372
Division Manager
Creditors Interchange

Local Address: 80 Holtz Dr. Cheektowaga, NY 14225.

New York City Department of Consumer Affairs License # 1168153.

Exhibit 6

Exh. 6

**Bank of America**
*Home Loans*

PO BOX 5170
SIMI VALLEY, CA 93062-5170

**Account Number 873418835**

Property Address
5457 BAYSHORE DRIVE

## IMPORTANT TAX INFORMATION ENCLOSED

0225901 01 AT 0.362 **AUTO  5 0 7743 60523-270662  -C01-I  -P26146

5457 BAY SHORE DRIVE TRUST
721 Acorn Hill Ln
Robin Zahran
Oak Brook, IL 60523-2706

**Active Loan Mortgage Interest Statement**

## INSTRUCTIONS FOR PAYER/BORROWER

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the Instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936 and Pub. 535.

Account number. May show an account or other unique number the lender has assigned to distinguish your account.

Box 1. Shows the mortgage interest received during the year. This amount includes interest on any obligation secured by real property, including: a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down"

mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2011 that accrued in full by January 15, 2012, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2011 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 2 may also be deductible. See Pub. 936 to figure the amount you can deduct.

Box 3. Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other Income" line of your 2011 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and Itemized Deduction Recoveries in Pub. 525.

Box 4. Shows mortgage insurance premiums which may qualify to be treated as deductible mortgage interest. See the Schedule A (Form 1040) Instructions.

Box 5. The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

---

☐ **CORRECTED (if checked)**

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | |
|---|---|---|---|
| BANK OF AMERICA, N.A.<br>CUSTOMER SERVICE<br>PO BOX 5170<br>SIMI VALLEY, CA 93062-5170      (800) 669-6607 | | **2011**<br><br>Form **1098** | **Mortgage Interest Statement** |

| RECIPIENT'S federal identification no.<br>94-1687665 | PAYER'S social security number<br>32-6026988 | 1 Mortgage interest received from payer(s)/borrower(s)<br>$ 74,429.37 | **Copy B**<br>**For Payer/Borrower** |
|---|---|---|---|
| PAYER'S/BORROWER'S name, Street address (including apt. no.), City, state, and ZIP code | | 2 Points paid on purchase of principal residence<br>$ 0.00 | The information in boxes 1, 2, 3, and 4 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| 5457 BAY SHORE DRIVE TRUST<br>721 Acorn Hill Ln<br>Robin Zahran<br>Oak Brook, IL 60523-2706 | | 3 Refund of overpaid interest<br>$ 0.00 | |
| | | 4 Mortgage insurance premiums<br>$ 0.00 | |
| Account number (see instructions)<br>873418835 | | 5 | |

Form **1098**     (keep for your records)     Department of the Treasury - Internal Revenue Service

** 000036

**IMPORTANT TAX INFORMATION ENCLOSED**

Home Loans

Property Address
5457 BAYSHORE DRIVE



0022346-0054259 820078

ROBIN ZAHRAN
721 ACORN HILL LN
ROBIN ZAHRAN
OAK BROOK, IL 60523-2706

**Active Loan Mortgage Interest Statement**

## INSTRUCTIONS FOR PAYER/BORROWER

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer-of-record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, B, or E for how to report the mortgage interest. Also, for more information, see Pub. 936 and Pub. 535.

Account number. May show an account or other unique number the lender has assigned to distinguish your account.

Box 1. Shows the mortgage interest received during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down"

mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in the current year that accrued in full by January 15 of the following year, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in the current year even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396. If the interest was paid on a mortgage, home equity, may also be subject to a deduction limitation.

Box 2. Not all points are deductible to you. Points paid on the purchase of your principal residence or refinance are only deductible in the year you paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 2 may also not be fully deductible. See Pub. 936 to figure the amount you can deduct.

Box 3. Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your Form 1040. No adjustment to your prior year(s) tax return is necessary. For more information, see Pub. 936 and Itemized Deduction Recoveries in Pub. 525.

Box 4. Shows mortgage insurance premiums which may qualify to be treated as deductible mortgage interest. See the Schedule A, Form 1040 instructions.

Box 5. The interest recipient may use this box to give you information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

| X | CORRECTED (if checked) | | | |
|---|---|---|---|---|
| RECIPIENT'S/LENDER'S name, address, and telephone number. | | Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 **2011** Form **1098** | Mortgage Interest Statement |
| BANK OF AMERICA, N.A. CUSTOMER SERVICE PO BOX 5170 SIMI VALLEY, CA 93062-5170 1-800-669-6607 | | | | |
| RECIPIENT'S federal identification no. 94-1687665 | PAYER'S social security number 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 | 1 Mortgage interest received from payer(s)/borrower(s) $ 74,429.37 | | Copy B For Payer/Borrower |
| PAYER'S/BORROWER'S name, Street address (including apt. no.), City, state, and ZIP code | | 2 Points paid on purchase of principal residence $ 0.00 | | |
| ROBIN ZAHRAN 721 ACORN HILL LN ROBIN ZAHRAN OAK BROOK, IL 60523-2706 | | 3 Refund of overpaid interest $ 0.00 | | |
| | | 4 Mortgage insurance premiums $ 0.00 | | |
| Account number (see instructions) 873418835 | | 5 | | |

Form 1098    (Keep for your records)    Department of the Treasury - Internal Revenue Service

0000382

Exhibit 7

Exh. 7

LAW OFFICES

**MANN BRACKEN LLP**
*Attorneys in the Practice of Debt Collection*
(A National Collection Attorney Network Firm)

2727 PACES FERRY ROAD
ONE PACES WEST, SUITE 1400
ATLANTA, GEORGIA 30339

1-888-232-8439

FACSIMILE 678-801-2355

PLEASE DIRECT ALL INQUIRIES TO THE MAIN OFFICE

REGIONAL OFFICES

TEMPE, AZ
AGOURA HILLS, CA
CONCORD, CA
GREENWOOD VILLAGE, CO
V      INGTON, DE
L      RATON, FL
ATLANTA, GA
ROCKVILLE, MD
NOVI, MI
CHAMPLIN, MN
HUNTERSVILLE, NC
CARSON CITY, NV
ROCHESTER, NY

REGIONAL OFFICES

INDEPENDENCE, OH
PORTLAND, OR
CAMP HILL, PA
PITTSBURGH, PA
CLINTON, TN
NASHVILLE, TN
HOUSTON, TX
IRVING, TX
SAN ANTONIO, TX
FAIRFAX, VA
RICHMOND, VA
VIRGINIA BEACH, VA

Associates Fina Oakbrook
1301 W 22ND ST STE 815
OAK BROOK, IL 60523

March 10, 2009

### In The National Arbitration Forum
### Request for Rule 40 Voluntary Dismissal

**Claimant**
**Re:** FIA Card Servic es, N.A. v. Associates Fina Oakbrook
**Forum File No.:** MX0805002082122
**Account No.:** 74923999373610

**Respondent(s)**
Associates Fina Oakbrook
1301 W 22ND ST STE 815
OAK BROOK, IL 60523

Please be advised that Claimant, FIA Card Servic es, N.A., has requested a voluntary dismissal of the above referenced arbitration claim, pursuant to rule 40.C of the National Arbitration Forum Code of Procedure.

MANN BRACKEN, LLC

END- 8761210

**MANN BRACKEN, LLC**
**ATTORNEYS AT LAW**
**HOURS OF OPERATION:**
MON - THURS, 8:00AM – 9:00PM (EST)
FRI, 8:00AM – 12:00PM (EST)
SAT, 8:00AM – 12:00PM (EST)

MANN BRACKEN, LLC

ATTORNEYS AT LAW

| PRINCIPAL OFFICE: | MID ATLANTIC OFFICE: | CAROLINA OFFICE: | TENNESSEE OFFICE: | TEXAS OFFICE: |
|---|---|---|---|---|
| ONE PACES WEST, STE 1400 | 1953 GALLOWS RD, STE 240 | 227 WEST TRADE ST, STE 1610 | 300 10TH AVE S, STE 832 | 8480 LBJ FREEWAY |
| 2727 PACES FERRY RD | VIENNA, VA 22182 | CHARLOTTE, NC 28202 | NASHVILLE, TN 37203 | 1045 ONE LINCOLN CNTR |
| ATLANTA, GA 30339 | MAIN: (800) 506-7673 | MAIN: (877) 804-2085 | MAIN: (877) 276-6676 | DALLAS, TX 75243 |
| MAIN: (888) 232-8439 | FAX: (703) 288-4070 | FAX: (704) 834-0504 | FAX: (615) 298-8354 | MAIN: (866) 769-7891 |
| FAX: (678) 801-2365 | | | | FAX: (972) 503-5591 |

February 1, 2008

**PERSONAL & CONFIDENTIAL**
Robin Zahran
721 Acorn Hill Ln          FEB  7 2008
Oak Brook, IL  60523

Re: *Verification of Debt in accordance with 15 U.S.C. § 1692g(a)(4)*

Name of Creditor:   FIA Card Servic es, N.A.
Account Number:   5490993672779552
Mann Bracken No:   72271190

Dear Robin Zahran :

In response to your request for validation of debt in accordance with 15 U.S.C. § 1692g (a) (4), please find the enclosed validation of the above-referenced account.  If you have any questions regarding this information, please feel free to contact us at 1-800-817-3214 or arbitration@mannbracken.com.

Thank you for your cooperation.  We look forward to hearing from you.

*Steven Dorsey*
*Canady. Shelton*

Sincerely,
MANN BRACKEN, LLC

James D. Branton

THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
THE DEBT COLLECTOR IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.

MANN BRACKEN, LLC
HOURS OF OPERATION:
MONDAY – THURSDAY: 8:00 AM – 9:00 PM (EST)
FRIDAY: 8:00 AM – 5:00 PM (EST)
SATURDAY: 8:00 AM – 12:00 PM (EST)
(866) 339-7178

Name of Primary Card Holder:  **Robin Zahran**

Social Security Number:  **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**

Address:     **721 Acorn Hill Ln**
             **Oak Brook, IL  60523**

Account Number:   **5490993672779552**

Date Account Opened:    **5/31/2000**

Credit Product Type:    **Credit Card**

Date of Charge-Off:

Total Charge-Off Amount: **$22582.99**

      *Amount of Principal Charge-Off:*   **$22582.99**
      *Interest and due at charge-off:*   **$0**

Date of Last Payment made to FIA Card Servic **es**, **N.A.**:   **8/21/2007**

Name of Present Creditor: FIA Card Servic **es**, **N.A.**
          Address:

Name of Original Creditor:
Address:

*THIS COMMUNICATION IS FROM A DEBT COLLECTOR.*
*THE DEBT COLLECTOR IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED*
*WILL BE USED FOR THAT PURPOSE.*

Robin Zahran

Unliquidated Claims for Fees, Costs or other ancillary relief. **Please note that, if we have not filed a claim against you and your fees and costs are $0.00, this could change at the Arbitrator's discretion.**

Amount of Principal Charge-Off: $22582.99
Interest and due at Charge-off: $0

a.   Attorney's fees:        $0    (If awarded by Arbitrator)
b.   Court Costs:            $0    (total to date)
c.   Interest:              $0    (total to date)

Total Amount of Payments Since 12/26/2007:  $0

Total of Balance and all ancillary relief: **$22582.99**

Present Interest Rate:  5%

Documents Attached*:

Application: Y or N
Statements: Y or N
Date Range of Statements:
System Notes:
Previous Correspondence:
Arbitration Awards or Legal Documents:

Default Contract Interest Rate*:  Y or N

Statutory Pre-Judgment Interest Rate*:  Y or N

Per Diem:      0.00%

Response to Specific Inquiry or Dispute*:

VERIFYING AGENT

_____
Authorized Representative,
FIA Card Services, N.A.

_____
_____
_____
_____
NOTARY PUBLIC

STATE: North Carolina
COUNTY: Guilford

Sworn to and subscribed this 5 day of February, 2008 personally before me
by Robin Mays.

Peggy A Richardson
Signature
Commission expires June 25 2012

[NOTARY PUBLIC SEAL]

[SEAL]

VRQ - 72271190

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
THE DEBT COLLECTOR IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.**

# MANN BRACKEN LLP

*Attorneys in the Practice of Debt Collection*
(A National Collection Attorney Network Firm)

2727 PACES FERRY ROAD
ONE PACES WEST, SUITE 1400
ATLANTA, GEORGIA 30339

1-888-232-8439

FACSIMILE 678-801-2355

PLEASE DIRECT ALL INQUIRIES TO THE MAIN OFFICE

REGIONAL OFFICES

TEMPE, AZ
AGOURA HILLS, CA
CONCORD, CA
GREENWOOD VILLAGE, CO
WILMINGTON, DE
RATON, FL
ATLANTA, GA
ROCKVILLE, MD
NOVI, MI
CHAMPLIN, MN
HUNTERSVILLE, NC
CARSON CITY, NV
ROCHESTER, NY

INDEPENDENCE, OH
PORTLAND, OR
CAMP HILL, PA
PITTSBURGH, PA
CLINTON, TN
NASHVILLE, TN
HOUSTON, TX
IRVING, TX
SAN ANTONIO, TX
FAIRFAX, VA
RICHMOND, VA
VIRGINIA BEACH, VA

**PERSONAL & CONFIDENTIAL**                                  January 7, 2009
Robin Zahran
721 ACORN HILL LN
OAK BROOK, IL 60523


Name of Creditor:  FIA Card Services, N.A.
Account Number: 4264296998285644
Balance: $41183.09
Mann Bracken No.: 82477300

Dear Robin Zahran :

The above referenced account has been referred to this firm for collection. **The Balance above is the amount owed as of the** date of this letter. Depending upon your account agreement with the creditor, interest, late charges and other charges may continue to accrue on your account. Therefore, the amount due on the date you pay may be greater. If you pay the Balance above and an additional payment is required for your account to be closed as paid in full, we will attempt to contact you again.

Your account agreement includes a provision for the resolution of claims or disputes by arbitration. If we are unable to reach satisfactory arrangements, the filing of an arbitration claim will be evaluated. This does not affect your rights set forth in this letter or any other rights you may have.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or a copy of a judgment if one exists and mail you a copy of such verification or judgment. If you request from this office in writing within 30 days from receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

To discuss payment arrangements, please contact us at 1-800-422-5196

Sincerely,
MANN BRACKEN, LLP

At this time, no attorney with this Firm has personally reviewed the particular circumstances of your account.

**This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.**

MANN BRACKEN, LLP
ATTORNEYS AT LAW
HOURS OF OPERATION:
MON - THURS, 8:00AM – 9:00PM (EST)
FRI, 8:00AM – 5:00PM (EST)
SAT, 8:00AM – 12:00PM (EST)

ADL - 82477300



ZWICKER & ASSOCIATES, P.C.

ATTORNEYS AT LAW
80 MINUTEMAN ROAD
ANDOVER, MA 01810
Tel. (800) 370-2251 / (978) 686-2255
Fax (978) 686-3538
NY CITY RESIDENTS ONLY CALL (877) 368-4531

03/25/10

Paul W. Zwicker
MA Bar
Thuotte
William H. Harris
MA & NH Bars
Marcilly H. Varsanian
MA Bar
Barbara A. Carnevale
MA Bar
Jennifer L. Bockstahler
MA Bar
Trevor Clement
MA Bar
Eleanore Hargreaves
MA & NH Bars
Erin M. Roczek
MA Bar
James Ballentine
MA Bar
Raymond J. Lee
CA Bar
Lee Jun
CA Bar
Arthur Tessimond
Jr. MA & NH Bars
Martin Hoffmann
VA Bar
Andrew J. Dick
NY & FL Bars
Janell Duncan
IN, OH & KY Bars
Richard Gabelman
NY & OH Bars
Denise D. Arnold
GA & WV Bars
Cecily J. McLeod
J. Starks
CA Bar
Dwight Daylor
AZ, NV & CA Bars
Sarah De La Rosa
TX & NY Bars
W. Cori Van Ess
TX Bar
Jean Salloway
NY Bar
J. Michael Samples II
FL Bar
My Xuan McClure Kuski
FL Bar
Michael S. McDonald
Bar
Christopher D. Graham
VA Bar
Megan D. Nedreiter
CA & TX Bar
Kendall L. Bryant
VA Bar
Shannon M. Pawley
GA Bar
Lisa L. Kern
IL Bar
Andrew S. Lerner
MD, DC, VA, & WV Bars
Gregory B. Walz
MD & DC Bars
Joseph O. Moreno
VA Bar
Aaron M. Hughes
NY & MA Bars
Sarah Ruggiero
Bars
Smith
IL, MA, ID Bars
Nicholas Adler
IL Bar

<u>**Personal and Confidential**</u>
   File ID: 3693686
ROBIN ZAHRAN
721 ACORN HILL LN
OAK BROOK, IL 605232

FIA001

Re: FIA Credit Card Services aka Bank of America
Account No: 4264296998285644  [2]                        Balance: **$41,203.32**

Dear ROBIN ZAHRAN:

This law firm has been retained by the above-named creditor to assist it in the collection of the funds you owe on the above-referenced account. As of the date of this letter, the balance on your account is $41,203.32.

This letter was created following a limited review of your account data, and at this time, no attorney with this firm has personally reviewed the particular circumstances of your account.

*Please note that unless you dispute said debt, or any portion thereof, within thirty (30) days of your receipt of this letter, this office shall assume the validity of this debt. Upon your written notification within such thirty-day period that this debt, or any portion thereof, is disputed, this office shall obtain verification of the debt or a copy of a judgment, if any, against you and mail you a copy of such verification or judgment. Furthermore, upon your written request within said thirty-day period, this office shall provide you with the name and address of the original creditor, if different from the current creditor.*

This firm is a debt collector. We are attempting to collect a debt and any information obtained will be used for that purpose.

Please contact this office to discuss repayment with Jason Houle, one of our non-attorney account managers.

Very truly yours,

ZWICKER & ASSOCIATES, P.C.

1 Important notices appear on the back of this letter. Please read them as they may affect your rights.
2 Colorado residents: please read important notice on the back of this letter.

# FREDERICK J. HANNA & ASSOCIATES, P.C.
## *Attorneys at Law*

| | | |
|---|---|---|
| FREDERICK J. HANNA<br>ELIZABETH C. WHEALLER<br>ROY D. REAGIN, JR.<br>DENNIS E. HENRY<br>JAMES T. FREANEY<br>LOUIS R. FEINGOLD | 1427 ROSWELL ROAD<br>MARIETTA, GA 30062<br>FAX:    (770) 980 0528<br>TOLL FREE:  (866) 811-1159 | MICHAEL S. PESKIN<br>● ROBERT A. WINTER<br>● ADMITTED: GA, MO, FL<br>WILLIAM C. RHODES<br>● ● A. RANDALL KNOPF<br>● ● ADMITTED: MO, IL |

May 9, 2008

ROBIN ZAHRAN
1301 W 22ND ST STE 815
OAK BROOK IL 60523-3377

<div align="right">

Re:    BANK OF AMERICA, NA
Reference:    4036475060014498
Balance:    $42,738.32
File No:    08148961

</div>

Dear ROBIN ZAHRAN :

    Please be advised that this law firm represents BANK OF AMERICA, NA  in its effort to collect your delinquent debt as shown above. Please contact our office to make arrangements to pay the unpaid balance.

    Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof,  this office will obtain verification of the debt or obtain a copy of a Judgment and mail you a copy of such Judgment or verification.  If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.  This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

    At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.

Sincerely,

Dennis Henry

Dennis E. Henry

*[handwritten: SCOTT Mahronholtz Fax 314— 802—0134. 866 811 1159]*

HOURS OF OPERATION ARE: MONDAY-FRIDAY 8AM-9PM EST
AND SATURDAY 8AM-1PM EST

" THIS IS A COMMUNICATION FROM

Exhibit 8

Exh 8

**LaSalle Bank**
ABN AMRO

4901 WEST IRVING PARK ROAD
CHICAGO, IL 60641-3571
(800) 435-7566
Fax: (773) 481-6490

CONSUMER LENDING

January 18, 2008

Mr. Robin Zahran
Mrs. Karen Zahran
721 Acorn Hill Ln.
Oak Brook, Ill. 60523

Regarding: Account # 2057300659643

Dear Mr. Zahran,

The payoff on the above loan is $454,740.16 good through April 1, 2008.

When the total is paid, La Salle Bank will send you the release papers on the loan.

Please make the check payable to La Salle Bank, and mail the check to the following address:

> La Salle Bank
> 4901 W. Irving Park Rd.
> Attn  Marie Shiffman
> Chicago, Illinois 60641

If you have any questions, please call me at (800)435-7566 x 6135, or my direct line at (773) 481-6135.

Sincerely,

Marie Shiffman
First Vice-President

*Exhibit 9*

# CHICAGO TITLE AND TRUST COMPANY

171 NORTH CLARK
CHICAGO, IL 60601

## ESCROW TRUST DISBURSEMENT STATEMENT

DISBURSEMENT DATE: February 29, 2008

REFER TO: REGINA SPRINGER
PHONE: (312)223-5448
FAX: (312)223-2108

PARTIES:
ROBIN ZAHRAN AND KAREN ZAHRAN
ROBERT D. PARKS AND CATHERINE N. PARKS

ESCROW TRUST NO.      D2028014022-001

TITLE ORDER NO.      01410-002801274

RECEIPTS:
02/29/08    ROBERT D. PARKS AND CATHERINE N. PARKS

1,010,000.00

$      1,010,000.00

DISBURSEMENTS:

01) PRORATIONS/CREDITS - Seller
    EARNEST MONEY                                    350,000.00-
    2008 TAX PRORATION                                  ___.__-
    2007 TAX PRORATION                              __,___.__-
                                                    --------------
    TOTAL PRORATIONS                                   360,826.68-
    PURCHASE PRICE                                   1,350,000.00
                                                    --------------
    ADJUSTED PURCHASE PRICE                           $989,173.32                $989,173.32

02) CHICAGO TITLE AND TRUST COMPANY - Seller's Charges
    Re: Title Order No. 01410-002801274

    TITLE INDEMNITY SETUP/MAINTENANCE FEE               125.00
    RECORDING ORDER AND RELEASES                         75.00
    MRG SERVICE FEE FOR PAYMENT OF TAXES                 75.00
                                                    --------------
                                                       $275.00                     $275.00

03) F.C.W.R.D.
    PAYOFF PROCESSING FEE
                                                         10.00                      $10.00

04) DUPAGE COUNTY TREASURER
    2006 TAX REDEMPTION TAX NUMBER
    06-36-305-007
                                                      9,848.74                    $9,848.74

05) CHICAGO TITLE INSURANCE COMPANY
    TITLE INDEMNITY COVERING EXCP. W & X ON
    TITLE COMMITMENT 2801274 DTD 2/6/08
                                                     75,800.00                   $75,800.00

06) SURVEY HOLDBACK
    SURVEY HOLDBACK
                                                    100,000.00                  $100,000.00

07) PAYOFF EXISTING LOAN WITH:
    LASALLE BANK
    MORTGAGE DOCUMENT NUMBERS: R2005-265248
    LOAN NUMBER: 2057300669643
                                                    454,740.16                  $454,740.16

RS6      02/29/08      10:56

NOTE: * - Items were Paid Outside of Closing.

ESCROW TRUST NO. 02029014022-001
PAGE NO. 2

08) ROBIN ZAHRAN AND KAREN ZAHRAN
NET PROCEEDS TO SELLER $348,499.4

09) PRORATIONS/CREDITS - Buyer
EARNEST MONEY 350,000.00
2007 TAX PRORATION 9,236.76
2008 TAX PRORATION 1,589.63
TOTAL PRORATIONS 360,826.88
PURCHASE PRICE 1,350,000.00
ADJUSTED PURCHASE PRICE $989,173.32 $989,173.3

10) CHICAGO TITLE AND TRUST COMPANY - Buyer's Charges

Re: Title Order No. 01410-002801274

ESTIMATED RECORDINGS 100.00
CLOSING FEE AND NY FEE 400.00
TITLE INSURANCE PREMIUM 400.00
SCHEDULE B DOCUMENT COPIES 50.00
STATE TRANSFER TAX 1,350.00
COUNTY TRANSFER TAX 675.00
$2,975.00 $2,975.0

11) ROBERT D. PARKS AND CATHERINE N. PARKS
TOTAL DISBURSEMENT AMOUNT $992,148.3
TOTAL BUYER RECEIPTS $1,010,000.0

OVERDEPOSIT TO BUYER $17,851.6

DISBURSEMENTS APPROVED:

DATE _2/29_2008_          FOR SELLER _____          FOR BUYER _____

DATE _____          _____          _____

DATE _____          FOR CHICAGO TITLE AND TRUST

RS6      02/29/08      10:56          NOTE: * - Items were Paid Outside of Closing.



4 of 6

 **Bank of America**
**Home Loans**

| Account Number 873418835 | Statement Date 01/02/2015 |
|---|---|

ROBIN ZAHRAN
5457 BAYSHORE DR
STURGEON BAY, WI 54235

**STEP 2**    **Determine lowest projected balance • continued**

| Month | Escrow deposit(s) | Tax payment(s) | Insurance payment(s) | MIP/PMI payment(s) | Balance |
|---|---|---|---|---|---|
| March 2015 | 670.15 | | | | -10,000.37 |
| April 2015 | 670.15 | | | | -9,330.22 |
| May 2015 | 670.15 | | | | -8,660.07 |
| June 2015 | 670.15 | | | | -7,989.92 |
| July 2015 | 670.15 | 4,020.87 | | | -11,340.64 |
| August 2015 | 670.15 | | | | -10,670.49 |
| September 2015 | 670.15 | | | | -10,000.34 |
| October 2015 | 670.15 | | | | -9,330.19 |
| November 2015 | 670.15 | | | | -8,660.04 |
| December 2015 | 670.15 | 4,020.88 | | | -12,010.77 |
| January 2016 | 670.15 | | | | -11,340.62 |
| February 2016 | 670.15 | | | | -10,670.47 |
| Ending balance | | | | | -$10,670.47 |
| Lowest projected balance | | | | | -$12,010.77 |
| Shortage payment amount | | | | | $1,000.90 |

\* Lowest projected balance (LPB)

At the time of analysis, Bank of America, N.A. assumes that all scheduled mortgage payments will be made to the effective date of your new payment.

You, of course, have the option to pay your anticipated shortage in full. (See Step 4 for more information.)

**STEP 3**    **Determine reserve requirement**
Federal law allows for the collection of a reserve amount to maintain a cushion for unexpected tax and/or insurance increases and other costs.
The reserve used for this period is shown below.

| | | |
|---|---|---|
| Lowest projected balance (see Step 2 above) | -$12,010.77 | |
| Total reserve requirement (16.6% of the base amount) * | $1,334.93 | |
| Additional amounts required | 1,334.93 | |
| Monthly reserve requirement (1,334.93 divided by 12) | | $111.24 |
| Available overage | $0.00 | |

\* Base amount equals the total of payments anticipated to be paid out of the escrow account during the year but Private Mortgage Insurance (PMI) or Mortgage Insurance Premium (MIP) amounts.

**STEP 4**    **Determine monthly payments**
**Calculation of monthly escrow payment**

| | | |
|---|---|---|
| Base amount needed for taxes and/or insurance (see Step 1) | $670.15 | |
| Shortage payment (see Step 2) | 1,000.90 | |
| Reserve requirement (see Step 3) | 111.24 | |
| Total monthly escrow payment | | $1,782.29 |

# PAYMENT INSTRUCTIONS

1. Please
   - don't send cash
   - don't staple the check to the payment coupon
   - don't include correspondence
   - include coupon with payment
2. Write your account number on the check or money order.

3. Write any additional amounts you are including.
4. Make your check payable to
   Bank of America, N.A.
   Attn: Remittance Processing
   PO BOX 650070
   DALLAS TX 75265-0070

Exhibit 10

Exh 10

*Door County*    **TREASURER'S OFFICE**    PHONE (920) 746-2286    **JAY ZAHN**
421 NEBRASKA ST.    STURGEON BAY, WI 54235     **COUNTY TREASURER**

ZAHRAN
ROBIN

## ECEIPT OF REAL ESTATE TAXES FOR 2014

OWN OF SEVASTOPOL      **TAX PARCEL 0220207282631A R**
OOR COUNTY      **BILL NO. 510**

TATE OF WISCONSIN      **RECEIPT NO. 12118**
                **DATE 12/30/2014**
                      **14:25:40**
            **RCVD BY**

ZAHRAN          **RE-PRINTED: 1/07/2015**
ROBIN
5457 BAY SHORE DR
STURGEON BAY WI 54235

AL D 779858, D602009          **NET TAX    31.63**
3C   COM 689.43'S CNTR SEC 7:
    S615.48' N89*W1335.11' N673
    .18' S89*E1087.53' S44.47'       **TOTAL TAX    31.63**
    S89*E245' BG.
                        **TAX PAID    31.63**

                      **BALANCE DUE    .00**

essed Values:
    Land          3,100
    Improvements
    Total         3,100

      USE VALUE ASSESSMENT

ment Information:      **Transaction: 315081**      **Received by: JANDERSON**

d by: CORELOGIC TAX SERVICES LLC

| Check# | Description | Amount |
|--------|-------------|--------|
| 4000273846 | | **3197.83** |
| | | **TOTAL RECEIVED   3197.83** |

*Called on 1/08/15*

*The total tax payment was pd in full by*

*Toll Free (866) 873-3651*

*It's a property tax service.*



70-503/759

1121

DATE 01/04/15

PAY TO
THE ORDER OF  Door Cnty Treasurer    $ 31.63

Thirty one                                DOLLARS

DENMARK STATE BANK

MEMO land taxes

---

TOWN OF SEVASTOPOL
COUNTY OF DOOR
2014 TAXES.

Parcel No. 022-02-07282631A R
Bill No. 022-0510

**PAY 1ST INSTALLMENT - $**    31.63
**OR**
**FULL PAYMENT - $**    31.63
**By January 31, 2015**

ZAHRAN
ROBIN
5457 BAY SHORE DR.
STURGEON BAY WI 54235

MAKE CHECK PAYABLE & MAIL TO:
DOOR COUNTY TREASURER
421 NEBRASKA ST
STURGEON BAY WI 54235
(920)746-2286

Tear off this stub and include with your payment. If receipt is needed, send stamped, self-addressed envelope. If payment is made by check, receipt is not valid until check has cleared all banks.

Exhibit 11

Exh 11

*Door County* **TREASURER'S OFFICE**
421 NEBRASKA ST.    STURGEON BAY, WI 54235

PHONE (920) 746-2286

**JAY ZAHN**
COUNTY TREASURER

## RECEIPT OF REAL ESTATE TAXES FOR 2014

5457 BAY SHORE DRIVE
TRUST

TOWN OF SEVASTOPOL
DOOR COUNTY

TAX PARCEL 0220206282612D2   R
BILL NO. 352

STATE OF WISCONSIN

RECEIPT NO. 16345
DATE 01/05/2015
14:09:59
RCVD BY   JA

5457 BAY SHORE DRIVE
TRUST
721 ACORN HILL LN
OAKBROOK IL 60523

LEGAL  D 644394, D623242
DESC   TRACT 2 CSM#1253 V.7 PG.203
       SEC. 6-28-26  GL#1

NET TAX      2694.00

TOTAL TAX      2694.00
FIRST DOLLAR CREDIT      35.44
PREVIOUS PAYMENTS    1329.28
PREVIOUS BALANCE    1329.28

Assessed Values:
Land           228,800
Improvements    35,200
Total          264,000
Ratio             .9974
Estimated Fair Market
   Value       264,700

TAX PAID      1329.28

BALANCE DUE        .00

Payment Information:          Transaction:  317664       Received by: JANDERSON

Paid by: 5457 BAY SHORE DRIVE-CORELOGIC TAX SERVICES LLC

Check#                 Description
4000278794

Amount
6470.55

TOTAL RECEIVED      6470.55



**Door County** TREASURER'S OFFICE     PHONE (920) 746-2286    **JAY ZAHN**
421 NEBRASKA ST.    STURGEON BAY, WI 54235     **COUNTY TREASURER**

## RECEIPT OF REAL ESTATE TAXES FOR 2014

5457 BAY SHORE DRIVE
TRUST

TOWN OF SEVASTOPOL
DOOR COUNTY

TAX PARCEL 0220206282612D3   R
BILL NO. 353

STATE OF WISCONSIN

RECEIPT NO. 16346
DATE 01/05/2015
14:10:06
RCVD BY   JA

    5457 BAY SHORE DRIVE
    TRUST
    721 ACORN HILL LN
    OAKBROOK IL 60523

LEGAL   D 644394, D623242
DESC   TRACT 3 CSM#1253 V.7 PG.203
      SEC. 6-28-26   GL#1

NET TAX    5418.63

TOTAL TAX    5418.63
FIRST DOLLAR CREDIT    35.44
PREVIOUS PAYMENTS    1836.92
PREVIOUS BALANCE    3546.27

Assessed Values:
    Land             294,800
    Improvements     236,200
    Total           531,000
    Ratio            .9974
    Estimated Fair Market
      Value           532,400

TAX PAID    3546.27

BALANCE DUE    .00

Payment Information:     Transaction: 317664     Received by: JANDERSON

Paid by: 5457 BAY SHORE DRIVE-CORELOGIC TAX SERVICES LLC

| Check# | Description | Amount |
|---|---|---|
| 4000278794 | | 6470.55 |

TOTAL RECEIVED    6470.55
Amount Refunded    1595.00-

NET AMOUNT PAID    4875.55

**Door County** TREASURER'S OFFICE   PHONE (920) 746-2286   **JAY ZAHN**
421 NEBRASKA ST.   STURGEON BAY, WI 54235   **COUNTY TREASURER**

## RECEIPT OF REAL ESTATE TAXES FOR 2014

ZAHRAN
ROBIN

TOWN OF SEVASTOPOL
DOOR COUNTY

TAX PARCEL 0220207282631A  R
BILL NO. 510

STATE OF WISCONSIN

RECEIPT NO. 12118
DATE   12/30/2014
14:25:40
RCVD BY   JA

ZAHRAN
ROBIN
5457 BAY SHORE DR
STURGEON BAY WI 54235

LEGAL D 779858, D602009
DESC  COM 689.43'S CNTR SEC 7:
S615.48' N89*W1335.11' N673
.18' S89*E1087.53' S44.47'
S89*E245' BG.

NET TAX         31.63

TOTAL TAX       31.63

TAX PAID        31.63

BALANCE DUE       .00

Assessed Values:
Land              3,100
Improvements
Total             3,100

USE VALUE ASSESSMENT

Payment Information:      Transaction:  315081      Received by: JANDERSON

Paid by: CORELOGIC TAX SERVICES LLC

| Check# | Description | Amount |
|--------|-------------|--------|
| 4000273846 | | 3197.83 |

TOTAL RECEIVED      3197.83

Exhibit 12

Exh. 12



**Bank of America**

**Home Loans**

Customer Service Department, CA6-919-01-41
PO Box 5170
Simi Valley, CA 93062-5170

Robin Zahran
721 Acorn Hill Ln
Oak Brook, IL 60523

**Notice Date:** January 13, 2015

**Account No.:** 873418835

**Property Address:**
5457 Bayshore Dr
Sturgeon Bay, WI 54235

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

We recently received your inquiry regarding the payment of your real estate taxes.

On 12/31/14, Bank of America, N.A. paid the county real estate tax installment due on 01/31/15, in the amount of $854.67, on parcel number 0220206282612D3.

This tax payment will appear on your next monthly statement following the payment date month.

**THANK YOU FOR YOUR BUSINESS**

If you need further assistance, please call us at (800) 669-6607, Monday-Friday 7a.m. to 7p.m. Local Time. We appreciate the opportunity to serve your home loan needs.

This communication is from Bank of America, N.A., the servicer of your home loan.
Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.

Please write your account number on all correspondence.   C3_371  TaxPd  12904  03/10/2011

C3_2962 ESCSTMTA 17050 05/30/2013

1 of 6

**Bank of America** 

**Home Loans**



CUSTOMER SERVICE
P.O.BOX 5170
SIMI VALLEY,CA 93062-5170

իրկ1 դ1հտ16111գ1հ11ե11ըո16ւ11Ո11Ս1Ս11ենդ16ն1հ1ժ11ենդ1

AT1      7-772-16252-0004502-005-1-000-001-000-000

ROBIN ZAHRAN
721 ACORN HILL LN
OAK BROOK      IL      60523

| | |
|---|---|
| **Statement date:** | 01/02/2015 |
| **Loan No.:** | 873418635 |
| **Property address:** | |
| 5457 BAYSHORE DR | |
| STURGEON BAY, WI 54235 | |

---

## IMPORTANT MESSAGE ABOUT YOUR HOME LOAN

Your escrow account was recently reviewed and, as a result, the escrow portion of your monthly loan payment may be changing effective 03/01/2015.

Enclosed is an updated escrow analysis statement for your loan.

---

## WHAT YOU NEED TO DO

There's nothing you need to do. Please keep this notification for your records.

### QUESTIONS?

We're pleased to serve your home loan needs. If you have any questions, please call us at 1-800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time.

We're required by law to inform you that Bank of America, N.A. is a debt collector. If you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt or demand a payment. If you are represented by an attorney, please provide this notice to your attorney.

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved. Some products may not be available in all states. This is not a commitment to lend. Restrictions apply.



**Bank of America**

**Home Loans**

*Customer Service Department, CA6-919-01-41*
*PO Box 5170*
*Simi Valley, CA 93062-5170*

Robin Zahran
721 Acorn Hill Ln
Oak Brook, IL 60523

**Notice Date:** January 13, 2015

**Account No.:** 873418835

**Property Address:**
5457 Bayshore Dr
Sturgeon Bay, WI 54235

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

We recently received your inquiry regarding the payment of your real estate taxes.

On 12/19/2014, Bank of America, N.A. paid the county real estate tax installment due on 01/31/14, in the amount of $2744.92 base and 452.91 penalty, on parcel number 0220206282612D2.

This tax payment will appear on your next monthly statement following the payment date month

**THANK YOU FOR YOUR BUSINESS**

If you need further assistance, please call us at (800) 669-6607, Monday-Friday 7a.m to 7p.m Local Time. We appreciate the opportunity to serve your home loan needs.

This communication is from Bank of America, N.A., the servicer of your home loan.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.

Please write your account number on all correspondence.  C3_371  TaxPd  12904  03/10/2011



CoreLogic

| | Date | State | Payee Name | Payee Number | Check Number |
|---|---|---|---|---|---|
| | 22-DEC-14 | WI | DOOR COUNTY-480150000 | 480150000 | 4000273846 |

| Client Nbr | Borrower Name | Parcel | Bill Number | Street | | Type | Yr | | Amount |
|---|---|---|---|---|---|---|---|---|---|
| 0011251 | ZAHRAN ROBIN | 022020628 2612D2 | 2658 | 5457 BAYSHORE, STURGEON BAY, WI 54235 | | | | | |
| 0011251 | ZAHRAN ROBIN | 022020628 2612D2 | | 5457 BAYSHORE, STURGEON BAY, WI 54235 | | BAS | 2013 | T | 2.74 |
| | | | | | | PEN | 2013 | T | 45: |

*329.28*

*D3 — 5383.19*

*022-02-0728263 1A*

*V*

*$31.63*

*1836.92*

Base Tax Due: 2,744.92

Penalty/Additional Fees Due: 452.91

Total Payment Enclosed: 3,197.83

*$507.64*

If there are any questions in regards to this payment, please contact (888) 828-9200

# Door County

**TREASURER'S OFFICE**
421 NEBRASKA ST.     STURGEON BAY, WI 54235

PHONE (920) 746-2286

**JAY ZAHN**
**COUNTY TREASURER**

RECEIPT OF REAL ESTATE TAXES FOR 2014

ZAHRAN
ROBIN

TOWN OF SEVASTOPOL
DOOR COUNTY

TAX PARCEL 0220207282631A   R
BILL NO. 510

STATE OF WISCONSIN

RECEIPT NO. 12118
DATE 12/30/2014
14:25:40

ZAHRAN
ROBIN
5457 BAY SHORE DR
STURGEON BAY WI 54235

RCVD BY
RE-PRINTED: 1/07/2015

LEGAL  D 779858  D602009
DESC  COM 689.43'S CNTR SEC 7:
S615.48' N89*W1335.11' N673
.18' S89*E1087.53' S44.47'
S89*E245' BG.

| | |
|---|---|
| NET TAX | 31.63 |
| TOTAL TAX | 31.63 |
| TAX PAID | 31.63 |
| BALANCE DUE | .00 |

Assessed Values:
Land                    3,100
Improvements
Total                   3,100

USE VALUE ASSESSMENT

Payment Information:          Transaction:  315081          Received by: JANDERSON

Paid by: CORELOGIC TAX SERVICES LLC

| Check#<br>4000273846 | Description | Amount<br>3197.83 |
|---|---|---|
| | TOTAL RECEIVED | 3197.83 |

Called on 1/08/15

The total tax payment was pd in full by

Toll Free (866) 873-3651

It's a property tax service

**Door County** TREASURER'S OFFICE    PHONE (920) 746-2286    **JAY ZAHN**
421 NEBRASKA ST.    STURGEON BAY, WI 54235    COUNTY TREASURER

## RECEIPT OF REAL ESTATE TAXES FOR 2014

5457 BAY SHORE DRIVE
TRUST

TOWN OF SEVASTOPOL
DOOR COUNTY

TAX PARCEL 0220206282612D3  R
BILL NO. 353

STATE OF WISCONSIN

RECEIPT NO. 16346
DATE 01/05/2015
14:10:06
RCVD BY JA

    5457 BAY SHORE DRIVE
    TRUST
    721 ACORN HILL LN
    OAKBROOK IL 60523

LEGAL  D 644394, D623242
DESC   TRACT 3 CSM#1253 V.7 PG.203
      SEC. 6-28-26  GL#1

NET TAX    5418.63

TOTAL TAX    5418.63
FIRST DOLLAR CREDIT    35.44
PREVIOUS PAYMENTS    1836.92
PREVIOUS BALANCE    3546.27

Assessed Values:
    Land    294,800
    Improvements    236,200
    Total    531,000
    Ratio    .9974
    Estimated Fair Market
      Value    532,400

TAX PAID    3546.27

BALANCE DUE    .00

Payment Information:    Transaction: 317664    Received by: JANDERSON

Paid by: 5457 BAY SHORE DRIVE-CORELOGIC TAX SERVICES LLC

| Check# | Description | Amount |
|---|---|---|
| 4000278794 | | 6470.55 |

TOTAL RECEIVED    6470.55
Amount Refunded    1595.00-

NET AMOUNT PAID    4875.55

# *Door County* TREASURER'S OFFICE

PHONE (920) 746-2286

**JAY ZAHN**
**COUNTY TREASURER**

421 NEBRASKA ST.    STURGEON BAY, WI 54235

5457 BAY SHORE DRIVE
TRUST

## RECEIPT OF REAL ESTATE TAXES FOR 2014

TOWN OF SEVASTOPOL
DOOR COUNTY

TAX PARCEL 0220206282612D2   R
BILL NO. 352

STATE OF WISCONSIN

RECEIPT NO. 16345
DATE  01/05/2015
14:09:59
RCVD BY  JA

5457 BAY SHORE DRIVE
TRUST
721 ACORN HILL LN
OAKBROOK IL 60523

LEGAL  D 644394, D623242
DESC   TRACT 2 CSM#1253 V.7 PG.203
SEC. 6-28-26  GL#1

| | |
|---|---:|
| NET TAX | 2694.00 |
| TOTAL TAX | 2694.00 |
| FIRST DOLLAR CREDIT | 35.44 |
| PREVIOUS PAYMENTS | 1329.28 |
| PREVIOUS BALANCE | 1329.28 |
| TAX PAID | 1329.28 |
| BALANCE DUE | .00 |

Assessed Values:

| | |
|---|---:|
| Land | 228,800 |
| Improvements | 35,200 |
| Total | 264,000 |
| Ratio | .9974 |
| Estimated Fair Market Value | 264,700 |

Payment Information:        Transaction: 317664      Received by: JANDERSON

Paid by: 5457 BAY SHORE DRIVE-CORELOGIC TAX SERVICES LLC

| Check# | Description | Amount |
|---|---|---:|
| 4000278794 | | 6470.55 |
| | TOTAL RECEIVED | 6470.55 |

2014 TAXES    Bill No.   022-0510

ZAHRAN
ROBIN
5457 BAY SHORE DR
STURGEON BAY WI 54235

Tear off this stub and include with your payment. If receipt is needed, send stamped, self-addressed envelope. If payment is made by check, receipt is not valid until check has cleared all banks.

LAST INSTALLMENT - $   31.6
OR
**FULL PAYMENT - $**   31.6.
By January 31, 2015
**MAKE CHECK PAYABLE & MAIL TO:**
DOOR COUNTY TREASURER
421 NEBRASKA ST
STURGEON BAY WI 54235
(920)746-2286

Dear Taxpayer:

The tax on this property was paid in full with a prior payment, therefore we are [X] returning your check(s) or [ ] sending. A copy of the receipt is enclosed.

If you have any questions, please call us at (920) 746-2286.

Jay Zahn
Door County Treasurer



ACORN HILL FARMS

79-503/759

1121

ROSECRANS RD.
DENMARK WI 54208-9204

DATE 01/04/15

PAY TO
THE ORDER OF   Door County Treasurer   $ 31.63

Thirty-one DOLLARS

DENMARK STATE BANK
Denmark · Bellevue · Maribel
Luxemburg · Whitelaw · Wrightstown

MEMO land taxes

# ROBIN AND KAREN ZAHRAN

## 721 ACORN HILL LANE
## OAK BROOK, ILLINOIS 60523
## (630) 573-1000 (OFFICE)
## (630) 986-8866 (HOME)
## (630) 574-8444 (FAX)

---

### FACSIMILE TRANSMITTAL SHEET

| TO: Bank of America | FROM: Robin Zahran |
|---|---|
| COMPANY | DATE: 3/26/14 |
| FAX NUMBER: 800-293-8158 | TOTAL NO. OF PAGES INCLUDING COVER: 6 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |

RE: Ins. Coverage   Wis. Insurance Coverage    YOUR REFERENCE NUMBER:

☐ URGENT   ☒ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:


**Bank of America**
**Home Loans**

P.O. BOX 961291
FORT WORTH, TX 76161-0291

002417 - 014127
ROBIN ZAHRAN
721 ACORN HILL LN
OAK BROOK, IL 60523-2706

Notice Date:　　**MARCH 11, 2014**

Subject: **Second and final notice - please provide insurance information for** 5457 BAYSHORE DR
STURGEON BAY WI 54235

Dear Robin Zahran:

This is your **second and final** notice that our records show that your Homeowner's (Hazard) insurance expired and we do not have evidence that you have obtained new coverage. **Because Homeowner's (Hazard) insurance is required on your property, we plan to buy insurance for your property.** You must pay us for any period during which the insurance we buy is in effect but you do not have insurance.

You should immediately provide us with your insurance information. The information needed is: (a) a copy of your insurance policy, insurance policy declaration page or certificate of insurance, or (b) the name and telephone number of your insurance agent or carrier and your insurance policy number. Here are the ways to provide this information to us:

· By having your insurance agent call us at (866) 265-3321.
· By faxing the information, including your loan number, to (800) 293-8158.
· By mailing the information, including your loan number, to the return address shown above.
· By faxing your insurance agent or carrier's name, telephone number, your loan number, your name, the property address and your insurance policy number to (800) 293-8158.
· By mailing your insurance agent or carrier's name, telephone number, your loan number, your name, the property address and your insurance policy number to the return address shown above.

Additional Requirements for Condominiums: If you live in a condominium complex insured under a master policy issued to your condominium association, please send us, using one of the ways shown above, evidence of insurance from the association's master policy demonstrating proof of adequate Hazard insurance coverage.

Please note: The insurance we buy:

· **Will cost an estimated $2,196.72 annually, which may be more expensive than insurance you can buy yourself.**
· **May not provide as much coverage as an insurance policy you buy yourself.**

If you have any questions, please contact us at (866) 265-3321.

For additional information concerning this request and insurance requirements for your loan #873418835, please see the attached "Important Information Concerning Your Home Loan Hazard Insurance".

*To Bank of America;*
*See Insurance Policy No from*
*Wis. Insurance plan.*
*Policy No 073133 H　enclosed*



COUNTY OF DOOR
421 NEBRASKA STREET
STURGEON BAY, WI 54235

BAYLAKE BANK
STURGEON BAY, WISCONSIN
79-210/759
General Account

**NO. 625852**

**DATE**
1/12/2015

**DOOR COUNTY**

PAY *******1595 DOLLARS AND 00 CENTS

Void After 6 Months

TO
THE
ORDER
OF

5457 BAY SHORE DRIVE TRUST
022-02-06282612D2

*Jay R Zahn*

*Jill M. Lau*

AUTHORIZED SIGNATURES

⑈062585 2⑈ ⑆0759021041⑆ 035⑈712⑈2⑈



**COUNTY OF DOOR**

421 NEBRASKA STREET
STURGEON BAY, WI 54235

CHECK NO.: **625852**

CHECK DATE: **1/12/2015**

If you have any questions regarding this check please contact the Finance Dept. at (920) 746-2200.

| Account Number | Description | Invoice No. | Invoice Amount |
|---|---|---|---|
| .26102. | OVER PMT OF TAXES | 01122015 | 1,595.00 |



CoreLogic

| Date | State | Payee Name | Payee Number | Check Number |
|------|-------|------------|--------------|--------------|
| 22-DEC-14 | WI | DOOR COUNTY-480150000 | 480150000 | 4000273846 |

| Client Nbr | Borrower Name | Parcel | Bill Number | Situs | | | Disb Type | Tax Yr | Inst | Amt |
|------------|---------------|--------|-------------|-------|--|--|-----------|--------|------|-----|
| 0011251 | ZAHRAN ROBIN | 0220206282612D2 | 2658.56 | 5457 BAYSHORE, STURGEON BAY, WI 54235 | | | | | | |
| 0011251 | ZAHRAN ROBIN | 0220206282612D2 | | 5457 BAYSHORE, STURGEON BAY, WI 54235 | | | BAS | 2013 | T | 2, |
| | | | | 5457 BAYSHORE, STURGEON BAY, WI 54235 | | | PEN | 2013 | T | 4 |

1329.28

D3 — 5383.19

022-02-072826131A

431.63

43163

1834.92

$507.64

Base Tax Due: 2,744.92

Penalty/Additional Fees Due: 452.91

Total Payment Enclosed: 3,197.83

If there are any questions in regards to this payment, please contact (888) 828-9200

**YAHOO! MAIL** Classic

RE: Account No. 873418835

From: "Benjamin, Lawrence M." <LBenjamin@ngelaw.com>
To: "robin zahran" <robinzahran@sbcglobal.net>
Cc: "Doug Cipriano" <doug.cipriano@sbcglobal.net>, "Newman, Tonya G."
<tnewman@ngelaw.com>

Wednesday, September 12, 2012 10:56 AM

Mr. Zahran –

I am not aware of the "late charges and fees, the inspection fees" etc. that you refer to. **Please be** more specific and I will respond or call me to discuss.

Lawrence M. Benjamin
312-269-8053

From: robin zahran [mailto:robinzahran@sbcglobal.net]
Sent: Wednesday, September 12, 2012 10:51 AM
To: Benjamin, Lawrence M.
Cc: Doug Cipriano; Newman, Tonya G.
Subject: Re: Account No. 873418835

No , no, we as i told you yesterday either sent the payment to you and if did not go out it will be out to you today registered mail .
The Bank told me yesterday you personally will be sending a detailed response to all of my inquiries regarding the payments by yesterday evening, including explanations of all the late charges and fees , the inspection fees , the identity of the people that have been trespassing our property and invading our privacy , the reasons you directed the bank to remove the loan from the trust and change the loan to me personally at the time you knew this conduct is not only wrong but also is illegal. , what happened to the payments and what to do with a refund the bank sent me and all other outstanding issues , we, have been waiting for you and the Bank,s responses for a long time but to no avail , could you also disclose the names of the Bank,s agents who tress passed our property in May , July and yesterday ,
thank you for responding in advance for what you should have done months and or weeks ago
Robin Zahran
1301 W. 22nd Street Suite 815
Oakbrook, Ill 60523
630-573-1000-ofc
630-574-8444-fax
robinzahran@sbcglobal.net

--- On Tue, 9/11/12, Benjamin, Lawrence M. <LBenjamin@ngelaw.com> wrote:

From: Benjamin, Lawrence M. <LBenjamin@ngelaw.com>
Subject: Account No. 873418835
To: "robin zahran" <robinzahran@sbcglobal.net>

20 14

C3_8805 ARMC 17718 07/15/2013




**Bank of America**

**Home Loans**

Special Loan Servicing, CA6-914-01-4
P.O. Box 10227
Van Nuys, CA 91410-0227



||ı|ı||ıı|ı|ıı|ı|ıı|ı|ı|ı|ı|ı||ıı|ı||ıı||ıı||ı||ı||ı||ı|

AB 0126     835 000     06038 #801 BP 0.406
ROBIN ZAHRAN
721 ACORN HILL LN
OAK BROOK     IL 60523

**Date:**     January 15, 2015

**Loan No.:** 873418835

**Property Address:**
5457 BAYSHORE DR
STURGEON BAY, WI 54235

## Changes to Your Mortgage Interest Rate and Payments on March 1, 2015

**Under the terms of your Adjustable-Rate Mortgage (ARM), you had a 1 year period during which your interest rate stayed the same. That period ends on March 1, 2015, so on that date your interest rate and mortgage payment change. After that, your interest rate may change annually for the rest of your loan term.**

|  | Current Rate and Monthly Payment | New Rate and Monthly Payment |
|---|---|---|
| Interest Rate: | 2.875 % | 3.000 % |
| Total Monthly Payment | $3,987.58 | $4,010.39 (due April 1, 2015) |

**Interest Rate:** We calculated your interest rate by taking a published "index rate" and adding a certain number of percentage points, called the "margin", and then rounding the sum of the index and the margin to the nearest 0.1250%. Under your loan agreement, your index rate is Weekly Average Yield on US Treasury Constant Maturity of 1-Year and your margin is 2.750%. The Weekly Average Yield on US Treasury Constant Maturity of 1-Year index is published weekly in Federal Reserve Board

**Rate Limit[s]:** Your rate cannot go higher than 10.750% over the life of the loan. Your rate can change each adjustment by no more than 2.0000%.

**New Interest Rate and Monthly Payment:** The table above shows your new interest rate and new monthly payment. Your new payment is based on the Weekly Average Yield on US Treasury Constant Maturity of 1-Year index, your margin, and then rounding the sum of the index and the margin to the nearest 0.1250%, your loan balance of $371,521.00 and your remaining loan term of 216 months. Your Total Monthly Payment set forth above includes escrow [Taxes and Insurance]

**Prepayment Penalty:** None

1782.29 eskow.
2205.29

 **Bank of America** ◆ **Home Loans**

PO Box 5170
Simi Valley, CA 93062-5170

**Customer service information**

📞 Customer service 1 800 669 6607

TDD/TTY users only 1 800 300 6407

En Español 1 800 295 0025

Monday-Friday 7 a m to 7 p m Local Time

📧 bankofamerica com

0030757 02 AT 0.403 **AUTO  6 0 0271 60523-270621  -C21-P30787-i12  6  BMKDEFAU
MSR A2D00101 0001000000000000 ~ SPG3 S0033 MLENVCRE
**ROBIN ZAHRAN**
721 ACORN HILL LN
OAK BROOK IL 60523-2706

| | |
|---|---|
| Account number | 873418835 |
| Payment due date | March 1, 2015 |
| **Total amount due** | **$6,639.71** |

*If payment is received after 03/16/15, $110 26 late fee will be charged*

# Your Home Loan Account

Statement date: February 17, 2015

 **Better Money Habits™**

Knowing how to manage your money has never been more important. That's why we've partnered with Khan Academy to develop a fact-based, conversational learning experience – you can learn what you want, how you want. Visit BetterMoneyHabits.com today

## Account information

| | |
|---|---|
| Property Address | 5457 BAYSHORE DR |
| Loan type | 30 Yr Conv Jumbo ARM |
| Contractual remaining term | 18 Years, 02 Months |
| Principal balance | $374,141.95 |
| Escrow balance | -$8,262.97 |
| Interest rate until 04/2016 | 2.875% |
| Prepayment penalty | No |

## Past payments breakdown

| | Paid since last statement | Paid year to date |
|---|---|---|
| Principal | $0.00 | $1,305.78 |
| Interest | $0.00 | $899.51 |
| Escrow (taxes and insurance) | $0.00 | $0.00 |
| Fees, charges, and advances | $0.00 | $0.00 |
| **Total** | **$0.00** | **$2,205.29** |

## Explanation of total amount due

| | |
|---|---|
| Principal | $1,312.04 |
| Interest | $893.25 |
| Escrow (taxes and insurance) | $1,782.29 |
| **Regular monthly payment** | **$3,987.58** |
| Current period fees and charges | $110.26 |
| Overdue payments, fees, and charges* | $2,541.87 |
| **Total amount due** | **$6,639.71** |

*Please see the 'Other important information' section of this statement*

## Transaction activity (01/16/15 to 02/17/15)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 01/30/15 | COUNTY TAX CREDIT | | 854 67 |
| 01/30/15 | COUNTY TAX CREDIT | | 1,595 00 |
| 02/17/15 | Late Fees (full payment not received by 02/01/2015) | 110 26 | |

へ

 Bank of America Home Loans

PO Box 5170
Simi Valley, CA 93062-5170

Customer service information

Customer service 1 800 669 6607

TDD/TTY users only 1 800 300 6407

En Español 1 800 295 0025

Monday-Friday 7am to 7pm Local Time

bankofamerica.com

0006289 01 MB 0.432 **AUTO  4 0 0371 60523-270621  -C08-P06295-I 3    BMKDEFAU
MSR A2D00101 0000000000000000 ~ MLENVCRE
ROBIN ZAHRAN
721 ACORN HILL LN
OAK BROOK IL  60523-2706

| Account number | 873418835 |
|---|---|
| Payment due date | April 1, 2015 |
| **Total amount due** | **$4,436.17** |

*If payment is received after 04/16/15, $111.40 late fee will be charged*

# Your Home Loan Account

Statement date: March 16, 2015

 **Better Money Habits™**

Knowing how to manage your money has never been more important. That's why we've partnered with Khan Academy to develop a fact-based, conversational learning experience – you can learn what you want, how you want. Visit BetterMoneyHabits.com today

## Account information

| Property Address | 5457 BAYSHORE DR |
|---|---|
| Loan type | 30 Yr Conv Jumbo ARM |
| Contractual remaining term | 18 Years, 00 Months |
| Principal balance | $371,521.00 |
| Escrow balance | -$6,480.68 |
| Interest rate until 04/2016 | 3.000% |
| Prepayment penalty | No |

## Past payments breakdown

| | Paid since last statement | Paid year to date* |
|---|---|---|
| Principal | $1,312.04 | $3,926.73 |
| Interest | $893.25 | $2,689.14 |
| Escrow (taxes and insurance) | $1,782.29 | $1,782.29 |
| Fees, charges, and advances | $0.00 | $0.00 |
| **Total** | **$3,987.58** | **$8,398.16** |

## Explanation of total amount due

| Principal | $1,299.30 |
|---|---|
| Interest | $928.80 |
| Escrow (taxes and insurance) | $1,782.29 |
| **Regular monthly payment** | **$4,010.39** |
| Current period fees and charges | $0.00 |
| Overdue payments, fees, and charges* | $425.78 |
| **Total amount due** | **$4,436.17** |

*Please see the 'Other important information' section of this statement

*Pd 4/16/15*

## Transaction activity (03/03/15 to 03/16/15)

*✗ mailed payment*

| Date | Description | Charges | Payments |
|---|---|---|---|
| 03/16/15 | Payment Posted - Thank you | | 3,987.58 |

**Bank of America**  **Home Loans**

Account number: 873418835
ROBIN ZAHRAN

Property address:
5457 BAYSHORE DR
STURGEON BAY, WI 54235

Bank of America, N.A.
PO Box 650070
Dallas, TX 75265-0070

Amount due on July 1, 2015   $3,531 7
$111 40 Late fee will be charged after July 16, 201

Additional principal $  3,53172

Additional escrow $

Total enclosed $  3531.72

8734188355000003531720003643 12

⑆586990058⑆873418835⑈

0669-08-00-0025407-0002-0064153

KAREN A. ZAHRAN   01409
721 ACORN HILL LN.
OAK BROOK, IL 60523-2706

887   1317

DATE 7/21/15

Bank of America   $3531.72

Thirty five hundred thirty one *22/100

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO

⑆071000013⑆   8107190 2⑈ 1317

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS,**

**EASTERN DIVISION**



F I L E D

AUG 1 4 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| ROBIN ZAHRAN and | ) | |
| KAREN ZAHRAN, | ) | |
| ABBAS ZAHRAN as TRUSTEE | ) | |
| of the 5457 BAY SHORE DRIVE TRUST | ) | **Case No. 15 C 1968** |
| | ) | **Judge Jorge Alonso** |
| **Plaintiffs,** | ) | |
| V. | ) | |
| | ) | |
| BANK OF AMERICA (as the Successor | ) | |
| in Interest to MBNA and LASALLE BANK), | ) | |
| | | |
| **Defendants.** | | |

## NOTICE OF FILING AND PROOF OF SERVICE

PLEASE TAKE NOTICE that the Plaintiffs caused to be filed with the clerk of the U.S. District Court for the Northern District of IL Plaintiffs' First Amended Complaint on this day, of August 12, 2015 by hand-delivery and by mailing two copies of this complaint with exhibits to the U.S. District by mail, postage pre-paid. A copy of which is being served on Defendant's attorney on this day, August 12, 2015 by e-mail and by U.S. Mail Postage Pre-Paid.

Respectfully submitted,

Robin Zahran

Service List

Benjamin M. Wojcik

WINSTOM & STRAWN LLP

35 W. Wacker Drive

Chicago, IL  60601-9703

(312) 558-3266,   bwojcik@winston.com