# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBIN ZAHRAN, KAREN ZAHRAN, and ABBAS ZAHRAN, as Trustee, 5457 Bay Shore Drive Trust, ) ) ) ) Plaintiffs, ) ) v. ) ) BANK OF AMERICA, ) ) Defendant. ) | No. 15 C 1968<br><br>Judge Jorge Alonso |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Robin Zahran, Karen Zahran and Abbas Zahran have filed an amended complaint against defendant Bank of America, N.A. ("BANA") for its own acts, the acts of its agent Corelogic Corporation, and as successor-in-interest to MBNA America, N.A. ("MBNA"), and LaSalle Bank, N.A. ("LaSalle"), asserting various claims of fraud, breach of contract and defamation as well as violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Defendant moves to dismiss all counts. This Court grants the motion.

**I.    BACKGROUND**

This case stems from a number of transactions involving the Zahrans and BANA or its predecessors-in-interest and how these transactions were reported to credit reporting agencies.

### A. Mortgage on Wisconsin Property

In February 2003, plaintiffs sought to purchase property in Door County, Wisconsin, located at 5457 Bay Shore Drive, in Sturgeon Bay.[1] In connection with the purchase, they borrowed $506,000 from ABN/AMRO Mortgage Group., Inc., as evidenced by a promissory

---

[1] The property actually appears to be located in the town of Sevastopol, although it has a Sturgeon Bay mailing address.

note secured by a mortgage on the property. The note changed hands in a number of transactions, and BANA has held it since 2008.

### 1. Credit reporting of note and mortgage on Wisconsin property

Robin Zahran ("Robin"), individually, and Abbas Zahran as trustee of the 5457 Bay Shore Drive Trust, signed the note as borrowers. Karen Zahran did not sign the note, but she initialed each page, as did Robin. Only Abbas Zahran signed the mortgage. (Am. Compl. Ex. 1.)

Plaintiffs allege that, a few months after the transaction took place, Robin Zahran noticed that the lender had erroneously reported the debt as Robin and Karen Zahrans' personally, not the Trust's. The Zahrans complained to the lender, and the lender corrected the reporting accordingly. (*Id*. ¶¶ 8-9.) Sometime in or around 2011, after BANA had obtained the note, BANA began to report the debt as a personal obligation of Robin Zahran's. (*Id*. ¶ 16.)

### 2. Escrow Dispute

Under the terms of the mortgage, the borrower must pay to the lender all amounts due for certain "escrow items" such as taxes and insurance, unless the lender waives the escrow obligation. (*Id*., Ex. 1 § 3, at 912-13.) However, the lender may revoke waiver of escrow "at any time" by giving notice in accordance with the terms of the mortgage. (*Id.*)

Robin paid for escrow items directly for a time, but he received a notice from BANA, dated September 24, 2014, notifying him that he would be required to pay taxes and insurance into an escrow account due to an arrearage. (*Id.* ¶¶ 32-34.) Robin attempted to continue paying taxes directly, but he learned that "Corelogic Tax Service LLC" had paid the taxes at BANA's direction. (*Id.* ¶¶ 36-37, 40-41.) The Zahrans claim that they were timely paying the taxes on this property and they object to the revocation of waiver as tortious and a breach of contract.

### B. Credit Card Settlement

In 2007, Robin had run up more than $60,000 in credit card debt. After negotiating with his creditor (FIA Card Services, Inc., an entity that was formerly known as MBNA and has since merged into BANA) and its debt collector, Creditors Interchange, he settled the debt for $21,804, about 35% of the balance. (*Id.*, Ex. 5.) In a December 29, 2007 letter to Robin confirming the settlement, Creditors Interchange wrote, "Upon clearance of your payment, the . . . account will be considered ***settled in full***. The credit bureaus will be notified . . . that your account is in a ***settled in full*** status" (emphasis added). (*Id.*, Ex. 5.) Plaintiffs claim that the lender had promised to report the debt as satisfied in full and to cease any attempts to collect the balance, but the debt appeared on Robin's credit report as settled for less than the amount owed or written off, and Robin continued to receive letters from debt collectors. (*Id.* ¶¶ 19, 21-26.) Plaintiffs allege that BANA and/or its predecessors-in-interest defrauded and defamed plaintiffs, breached the settlement agreement, and violated the Fair Credit Reporting Act by breaking promises with respect to the reporting of the debt.

### C. HELOC and Mortgage on Illinois Property

In 2002, the Zahrans obtained from LaSalle[2] a home equity line of credit ("HELOC") secured by a mortgage on their home at 718 Acorn Hill Lane, Oak Brook, Illinois. (*Id.* ¶ 6.) Plaintiffs allege that they sold their home in 2008 and used the proceeds to pay off the HELOC loan. (*Id.* ¶ 27.) However, according to plaintiffs, the lender continued to report to credit reporting agencies that this loan was paid for less than the amount owed, despite the Zahrans' protests that they had paid "the entire amount of the pay-off in full as requested." (*Id.* ¶¶ 28-30.)

---

[2] LaSalle was subsequently purchased by BANA. (Compl. ¶ 6.)

3

D. **Procedural History**

This action was originally filed in state court, but defendant removed it to this Court on March 4, 2015, and subsequently filed a motion to dismiss. This Court denied the motion as to the FCRA claim and the defamation claim, but it granted the motion as to all other claims, without prejudice to the filing of an amended complaint. (Mem. Op. & Order, July 17, 2015, ECF No. 20.)

Plaintiffs have now filed an amended complaint, in which they reassert a number of the dismissed claims. In Counts I-IV, plaintiffs assert claims of fraud in the inducement (Count I), breach of contract (Count II), violation of the Illinois Consumer Fraud and Deceptive Practices Act (Count III), and fraud (Count IV), all of which relate to the 2007 credit card debt settlement and relevant credit reporting. In Counts V and VI, plaintiffs assert claims under the FCRA (Count V), and for defamation *per se*/libel/slander[3] (Count VI); these claims may be read to refer to the banks' credit reporting related to the credit card debt involved in the 2007 settlement as well as other debts. In the remaining counts, plaintiffs assert claims for breach of covenant implied in note or mortgage (Count VII), violation of RESPA (Count VIII), and slander on title (Count IX), all of which relate to the 5457 Bay Shore Drive mortgage and the dispute over the escrow account.

II. **LEGAL STANDARDS**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must

---

[3] Illinois no longer recognizes any distinction between written and oral defamatory statements, *Bryson v. News America Publications, Inc.*, 672 N.E.2d 1207, 1215 (Ill. 1996), so the Court will refer to this claim as simply a claim for defamation *per se*.

4

"give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). Additionally, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## III. ANALYSIS

### A. Claims Related to 2007 Credit Card Settlement (Counts I-IV)

In the original complaint, plaintiffs' claims related to the 2007 credit card settlement relied heavily on the allegation that the agreement between Robin and his creditors was that the credit card debt would be reported as paid in full, but the Court dismissed these claims because it is apparent on the face of the December 29, 2007 Creditors Interchange letter that, even assuming that that letter represents the parties' full agreement, the agreement was that the debt

5

would be reported as "settled in full," not "paid in full." Changing tack, plaintiff now emphasizes that he was promised that the debt would be considered settled or "satisfied in full" (Am. Compl. ¶ 22), and defendant would make no attempts to collect the balance, but defendant continued to attempt to collect the debt through debt collectors. He attaches as Exhibit 7 a number of debt-collector communications. It is not clear on the face of these letters that they relate to the debt that was the subject of the 2007 agreement, but the Court assumes for purposes of this motion that they do.

There are no statements in the Creditors Interchange letter that might be read as a promise to cease debt collection attempts other than the statement that credit bureaus will be notified that the account is in a "settled in full" status. To the extent plaintiffs intend to allege that defendant or its predecessors made any other promises concerning debt collection, their allegations are made in only the most conclusory fashion and without sufficient detail to raise plaintiffs' claims above the speculative level.

The fraud claims asserted in Counts I, III, and IV must all comply with Federal Rule of Civil Procedure 9(b), which requires plaintiffs to describe the circumstances of the alleged fraud with particularity by providing the "who, what, where, when and how" of the alleged misrepresentations. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Plaintiffs need not offer specific misrepresentations word for word, but they must plead enough factual matter to allow the Court to infer that it is plausible, not merely possible, that defendant or its predecessors intended to deceive plaintiffs. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). The debt collection letters plaintiffs received after paying the settlement amount are "just as much in line" with alternative explanations, such as miscommunication, misunderstanding, internal mix-up or some other sort

of honest mistake, as with fraud, *see Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009) (citing *Twombly*, 550 U.S. at 554); *Pirelli*, 631 F.3d at 444-45. Indeed, one of the letters plaintiff submits from Mann Bracken LLP, a collections law firm, states that "Claimant, FIA Card Services, N.A., has requested a ***voluntary dismissal*** of the above referenced . . . claim." (Am. Compl., Ex. 7, ECF No. 24, at 85 (emphasis added).)

Plaintiff's breach of contract claim, asserted in Count II, need not meet the heightened standard of Rule 9(b), but even under Rule 8(a)(2), plaintiff must plead enough factual matter to allow the Court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Again, as stated above, the allegations concerning the 2007 settlement agreement are just as much in line with an innocent explanation, such as a mistake or misunderstanding between defendant and its collections agents, as with a theory that defendant agreed it would make no further attempts to collect the debt and then forwarded the debt to collections agencies anyway. *See Brooks*, 578 F.3d at 581-82. Counts I-IV are dismissed.

### B. Credit Reporting (Counts V and VI)

Counts V and VI also relate to credit reporting, but these counts do not rest solely on the 2007 credit card debt settlement.

#### 1. FCRA (Count V)

In Count V, plaintiffs claim that defendants violated the Fair Credit Reporting Act by furnishing erroneous information to credit reporting agencies and failing to correct the errors and inaccuracies upon being made aware of them.

In response, defendant contends that (a) there is no private right of action under the relevant section of the FCRA, and (b) plaintiffs' claims are barred by the statute of limitations, 15 U.S.C. § 1681p. Defendant is correct, as this Court recognized in ruling on defendant's

previous motion to dismiss, that there is no private right of action under 15 U.S.C. § 1681s-2(a), which prohibits furnishing inaccurate information to credit reporting agencies. (Mem. Op. & Order, July 17, 2015, ECF No. 20 (citing *Todd v. Chase Bank USA, N.A.*, No. 11 C 6258, 2012 WL 470099, at *1-2 (N.D. Ill. Feb. 13, 2012); *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 966-67 (N.D. Ill. 2005))). However, plaintiffs also cite § 1681s-2(b), which does provide a private right of action against entities that, upon receiving notice from a credit reporting agency that they may have furnished erroneous or inaccurate information, fail to undertake a proper investigation and remedy any erroneous reporting the investigation might reveal. *Typpi v. PNC Bank, N.A.*, No. 13 CV 3930, 2014 WL 296035, at *9 (N.D. Ill. Jan. 27, 2014).

Defendant argues that plaintiffs' FCRA claim is barred by the statute of limitations because it was not brought within "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability," *see* 15 U.S.C. § 1681p, but the Court finds that plaintiffs' FCRA claim is fatally deficient for a different reason.[4] Under § 1981s-2b, a creditor's obligation is to conduct an investigation after it receives notice from a credit reporting agency that a consumer has disputed a debt, and correct any errors that it finds; if it conducts a reasonable investigation and concludes that it has committed no reporting errors, it has nevertheless discharged its obligation, even if its conclusion is incorrect. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009). Stated differently, the statute "does not provide relief on the basis of an investigation culminating in an unfavorable conclusion, but

---

[4] Although there is no Seventh Circuit decision directly on point, some courts have held that the statute of limitations on a § 1681s-2(b) claim begins to run not when the plaintiff discovers the erroneous reporting but when it becomes clear that the furnishing entity or entities "failed to comply with their FCRA duties" to investigate disputed reports and correct any errors the investigation might reveal. *See Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 290 (S.D.N.Y. 2014); *contra Hancock v. Charter One Mortgage*, No. 07-15118, 2008 WL 2246042, at *2 (E.D. Mich. May 30, 2008). Under that standard, the Court cannot determine, based only on the allegations of the amended complaint and the attached documents, when the limitations period began to run in this case.

8

rather, only on the basis of a failure to perform an investigation, or a failure, post-investigation, to follow up with the consumer credit reporting agencies" if an error is detected. *Perry v. PNC Bank, N.A.*, No. 15cv206, 2015 WL 5838715, at *6 (E.D.N.C. Oct. 7, 2015).

In this case, plaintiffs allege that they "protested erroneous reporting to the CRAs [*i.e.*, credit reporting agencies] by demanding the deletion of the erroneous reporting[] or to report them accurately . . . . The CRAs refused, stating to Zahran they in fact investigated Zahrans' complaint thoroughly with BANA . . . and that BANA confirmed to them the accuracy of the reporting and that BANA had in fact supplied them with verified documentation[] in support of the reporting." (Am. Compl. ¶ 18.). Any claim that defendant failed to perform a reasonable investigation is, at best, fatally conclusory, as plaintiffs provide no facts to support any conclusion that defendant's investigation was unreasonable. *See Eisberner v. Discover Prods., Inc.*, 921 F. Supp. 2d 946, 949 (E.D. Wis. 2013), *Orozco v. Experian Information Sols.*, No. 2:12-CV-00955-MCE, 2012 WL 6720556, at *5 (E.D. Cal. Dec. 26, 2012). At worst, plaintiffs' claim is contradicted by their own allegations. Plaintiffs have essentially admitted that BANA performed an investigation, in which it presumably learned facts such as that Robin Zahran signed the promissory note used to purchase the 5457 Bay Shore Drive property or that in 2007 plaintiffs' credit card debt was "settled in full" but not paid in full, and determined that no correction was necessary.

Plaintiffs' dispute is essentially over how their lenders have characterized certain debts based on settlements or other alleged agreements, not whether, for example, Robin Zahran was actually involved in incurring the debts that appeared on his credit report. To prevail in an FCRA claim against a furnisher of credit information under section 1681s-2b, plaintiffs must show the "factual inaccuracy" of the information the furnisher provided, "not the existence of

9

disputed legal questions," as furnishers are "neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). It is clear from plaintiffs' allegations that the dispute in this case, as in *Chiang*, is not over factual inaccuracies; it is over how defendant or its predecessors interpreted certain transactions or agreements with plaintiffs. These allegations do not state a claim under the FCRA.

### 2. Defamation *Per Se* (Count VI)

In Count VI, plaintiffs allege that BANA defamed them by publishing false information to credit reporting agencies. Defendant moves to dismiss the defamation claim because plaintiffs have not alleged that defendant made any statements fitting within any of the recognized categories of defamation *per se*, and, in any case, the challenged statements were substantially true. *See Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1215 (Ill. 1996); *Pope v. Chronicle Publ'g Co.*, 95 F.3d 607, 613 (7th Cir. 1996).

The Court need not determine whether dismissal is appropriate on these grounds because there is a more fundamental reason for dismissing the defamation claim. The Seventh Circuit has held that state-law defamation claims such as plaintiffs' are preempted by the FCRA. *See Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011); *see also Aleshire v. Harris, N.A.*, 586 F. App'x 668, 670-71 (7th Cir. 2013). Plaintiffs' defamation claim is dismissed.

### C. Escrow Account

Counts VII-IX all relate to the 5457 Bay Shore Drive mortgage and the dispute over the escrow account. Defendant contends that plaintiffs offer only conclusory statements in support of their claims and fail to state any cognizable claim for relief in these counts.

disputed legal questions," as furnishers are "neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). It is clear from plaintiffs' allegations that the dispute in this case, as in *Chiang*, is not over factual inaccuracies; it is over how defendant or its predecessors interpreted certain transactions or agreements with plaintiffs. These allegations do not state a claim under the FCRA.

### 2. Defamation *Per Se* (Count VI)

In Count VI, plaintiffs allege that BANA defamed them by publishing false information to credit reporting agencies. Defendant moves to dismiss the defamation claim because plaintiffs have not alleged that defendant made any statements fitting within any of the recognized categories of defamation *per se*, and, in any case, the challenged statements were substantially true. *See Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1215 (Ill. 1996); *Pope v. Chronicle Publ'g Co.*, 95 F.3d 607, 613 (7th Cir. 1996).

The Court need not determine whether dismissal is appropriate on these grounds because there is a more fundamental reason for dismissing the defamation claim. The Seventh Circuit has held that state-law defamation claims such as plaintiffs' are preempted by the FCRA. *See Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011); *see also Aleshire v. Harris, N.A.*, 586 F. App'x 668, 670-71 (7th Cir. 2013). Plaintiffs' defamation claim is dismissed.

### C. Escrow Account

Counts VII-IX all relate to the 5457 Bay Shore Drive mortgage and the dispute over the escrow account. Defendant contends that plaintiffs offer only conclusory statements in support of their claims and fail to state any cognizable claim for relief in these counts.

The Court agrees with defendant. In recounting the facts of their escrow dispute, plaintiffs ignore the fact that, under the express terms of Section 3 of the mortgage, the lender may revoke the waiver of escrow "at any time." (Compl., Ex. 1.) Even if, as plaintiffs contend, it was actually incorrect that the 5457 Bay Shore Drive property was behind on its taxes in September 2014 when BANA revoked the waiver of escrow, BANA was nevertheless within its rights in opting to revoke waiver. The Court cannot conclude that BANA breached any covenant or somehow deceived or defamed plaintiffs merely by exercising its contractual right to revoke waiver of escrow, and plaintiffs do not provide other facts sufficient to state a plausible claim against BANA under any of the causes of action described in Counts VII-IX. These counts are dismissed.

**CONCLUSION**

For the reasons set forth above, the Court grants BANA's motion to dismiss [29]. The claims in counts I-IV and VII-IX are dismissed with prejudice because plaintiffs are still unable to meet their pleading burden, even after this Court previously dismissed these claims and gave plaintiffs an opportunity to amend, and it is evident that any further amendment would be futile. Plaintiffs' defamation claim (Count VI) is dismissed with prejudice because it is preempted and any amendment would be futile. Plaintiffs' FCRA claim (Count V), which was not previously dismissed, is dismissed without prejudice. Plaintiffs have 21 days from the date of this order to amend Count V—and only Count V—if they can cure the defects identified in this Order and state a claim in compliance with the Federal Rules of Civil Procedure.

**SO ORDERED.**

**ENTERED: March 3, 2016**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**